[830 NYS2d 531]

In the Matter of KEVIN J. FLYNN (Admitted as KEVIN JOHN
FLYNN), an Attorney, Respondent. DEPARTMENTAL DISCIPLIN-
ARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT,
Petitioner.

First Department, February 8, 2007

## APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Kevin P. Culley* of counsel), for petitioner.

No appearance for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Kevin John Flynn was admitted to the practice of law in the State of New York by the Second Judicial Department on February 24, 1988. At all times pertinent to this proceeding, respondent maintained an office for the practice of law within this judicial department.

The Departmental Disciplinary Committee now seeks an order pursuant to 22 NYCRR 603.4 (d) confirming the findings of fact and conclusions of law, and due to the different sanction recommendations, disciplining respondent as this Court deems just and appropriate.

Respondent formed a law partnership with another attorney but each worked on their own cases. The law firm primarily defended Chase Bank in small litigation matters (involving less than $25,000). The charges arose out of respondent's representation of Chase in eight separate matters between 2000 and 2004.

On May 25, 2005, a notice of 27 charges was served on respondent alleging a pattern of misconduct, including his neglect of six matters and inadequate preparation of a seventh matter in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30), misrepresentations to his client as to the status of a matter in violation of DR 1-102 (a) (4) (22 NYCRR 1200.3), failing to inform the client of the status of four other matters and settling them without his client's knowledge or consent in violation of DR 1-102 (a) (4), intentionally prejudicing and damaging his client, JPMorgan/Chase Bank (Chase), with respect to all eight matters as a result of his neglect, misrepresentation and inadequate preparation which caused this client unknowingly to default in payment of a judgment, to be unprepared for trial, and to have pleadings stricken or judgments entered against it for failure to comply with

disclosure obligations in violation of DR 7-101 (a) (3) (22 NYCRR 1200.32). Respondent was also charged with falsifying the accounting records of his law firm to disguise settlement drafts as draws to himself in an attempt to conceal his neglect in violation of DR 1-102 (a) (4).

Respondent served his answer admitting most of the underlying factual allegations but denying the charges themselves. A Referee conducted hearings on September 13 and 20, 2005, at which respondent appeared pro se and testified on his own behalf. In a report dated October 25, 2005, the Referee sustained all of the charges except for the nine charges pertaining to DR 7-101 (a) (3) (conduct which intentionally prejudiced and damaged the client during the course of the professional relationship), and recommended respondent be suspended for three months. He concluded that although Chase was prejudiced and "to an undetermined extent there was damage" in the course of respondent's representation, there was no evidence that respondent acted intentionally or with "ill will, which is implied by a claim of intentionally prejudicing a client." He further stated that "respondent knew his conduct was wrong[] but his conduct in quietly spending his own money to protect his client from the consequences of his misconduct rebuts any notion that he intended that the client be prejudiced or harmed."

In recommending a three-month suspension, the Referee took into consideration several mitigating factors including respondent's full cooperation with the disciplinary proceeding, his "candor, contrition and acknowledgment of personal failure," and the absence of a prior disciplinary record. The Referee indicated that he would have recommended a censure if it were not for respondent's failure to pay his biennial attorney registration dues since 2000. Furthermore, the Referee noted the lack of any explanation by respondent other than that he "procrastinated on a number of cases," and emphasized that respondent paid more than $38,000 of his own money to settle matters and did so "to protect the client from his own misconduct."

A Hearing Panel affirmed the Referee's findings of liability, but it determined the Referee's recommended three-month suspension was "insufficient" and the Committee's recommended 18-month suspension was "not called for." Accordingly, the Panel recommended a seven-month suspension. The Panel agreed that respondent's conduct was "inexcusable and serious" but noted the evidence in mitigation, that respondent used his own funds to resolve many of the legal matters, and that it

appeared Chase did not suffer any significant financial loss as a result of respondent's misconduct.

With regard to the period of suspension, comparable neglect cases have resulted in a period of suspension ranging from six months to three years depending on whether there is a prior disciplinary history, the seriousness of the consequences from the neglect, the number of matters neglected, whether or not the attorney misled clients and/or the Committee, and whether the attorney cooperated with the Committee and was candid in the proceedings (*Matter of Benick*, 293 AD2d 176 [2002]).

Here, respondent engaged in a pattern of misconduct over $3^{1}/_{2}$ years involving the neglect of eight client matters and concealed his neglect by failing to inform Chase about the status of nearly all of those matters (including that he had entered into settlements and pleadings were stricken or judgments entered against it), and by making an affirmative misrepresentation in one matter that the case was still active. Respondent also falsified his firm's financial records to conceal his misconduct from his partner. However, respondent fully cooperated with the Committee, he admitted the relevant allegations of misconduct, he expressed sincere remorse for his nonvenal conduct, he has no prior discipline, he no longer is practicing law and does not plan to practice in New York in the future and, notably, he used $38,000 of his own money to resolve the problems he created.

Accordingly, the petition should be granted to the extent of confirming the findings of fact and conclusions of law sustaining the 18 charges of professional misconduct and suspending respondent for a period of one year.

ANDRIAS, J.P., SAXE, FRIEDMAN, GONZALEZ and CATTERSON, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of one year, effective March 8, 2007, and until further order of this Court.