09-90016-am
In re Steven A. Mundie

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 20th day of June, two thousand eleven.

PRESENT:
            José A. Cabranes,
            Robert D. Sack,
            Richard C. Wesley,
                        *Circuit Judges.*

_____

In re Steven A. Mundie,                           09-90016-am

            Attorney.                             **ORDER OF
                                                  GRIEVANCE PANEL**

_____

FOR STEVEN A. MUNDIE:          Richard M. Maltz, Esq., New York, New York.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the report of this Court's Committee on Admissions and Grievances ("the Committee") is adopted, and STEVEN A. MUNDIE is PUBLICLY REPRIMANDED for the misconduct described in the

Committee's report.

## I.   Summary of Proceedings

By order filed in March 2009, this Court referred Steven A. Mundie to the Committee for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures. During the Committee's proceedings, Mundie had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held in March 2010.  Mundie was represented during the Committee's proceedings by Richard M. Maltz, Esq.  Presiding over the hearing were Committee members Deirdre M. Daly, Esq., and Terrence M. Connors, Esq., and Committee chair Mary Jo White, Esq.  In October 2010, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations.  Thereafter, the Court provided Mundie with a copy of the Committee's report, and Mundie responded.

In its report, the Committee concluded that there was clear and convincing evidence that Mundie had engaged in conduct warranting the imposition of discipline.  Report at 10. Specifically, the Committee found that: (1) Mundie's brief in *Yi Mei Li v. Mukasey*, 06-3422-ag, contained a number of defects and referenced irrelevant facts and issues as a result of Mundie having incorporated portions of a brief from a different case

2

without making necessary changes; and (2) Mundie's failure to comply with this Court's scheduling orders had resulted in the dismissal of thirty-eight cases based on his default. *Id.* at 4-9. After finding various aggravating and mitigating factors, *id.* at 9-10, the Committee recommended that Mundie be publicly reprimanded, and required to attend continuing legal education ("CLE") classes on law office management, and to comply with certain reporting requirements, *id.* at 10. In his response to the Committee's report, Mundie, *inter alia*, accepted the Committee's findings, but requested that this Court issue a private, rather than public, reprimand. Response at 1.

## II. Disposition

Upon due consideration of the Committee's report, the underlying record, and Mundie's submissions, it is hereby ORDERED that Mundie is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report. We reject Mundie's request for a private reprimand. Although we acknowledge the significant mitigating factors Mundie referenced in both the Committee's proceedings and his response to the Committee's report, we find that the Committee's report accorded those factors the appropriate weight.

It is further ORDERED that Mundie is DIRECTED to:

(a) complete, within six months of the filing date of this order, six hours of CLE on law office management, which must be taken in addition to the regular CLE requirements applicable to all attorneys belonging to

3

the New York bar. Mundie must submit information about proposed CLE courses directly to the Committee's secretary, who will inform him whether the Committee agrees that the proposed courses satisfy his obligation. Mundie must certify his completion of the required CLE programs by sworn statement filed with both this panel and the Committee's secretary within seven days after the end of the six-month period. The Committee may modify these deadlines, either on motion or *sua sponte*.

(b) comply with the reporting requirements described on page 10 of the Committee's report. As stated in the Committee's report, if a report required by this order "is not timely filed or reveals deficiencies not justified by exigent circumstances, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit, without hearing further testimony." Report at 10.

The text of this panel's March 2009 order and the Committee's report are appended to, and deemed part of, the present order for the following disclosure purposes. Mundie must disclose this order to all courts and bars of which he is currently a member, and as required by any bar or court rule or order. Mundie also must, within fourteen days of the filing of this order, file an affidavit with this Court confirming that he has complied with the preceding disclosure requirement. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Mundie, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York

4

State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[1]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:   Michael Zachary
      Counsel to the Grievance Panel

---

[1] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities. While we request that all such documents remain confidential to the extent circumstances allow, we leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, must be made available to any person or the public.

## APPENDIX 1

## Text of March 2009 order

For the reasons that follow, Steven A. Mundie is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Mundie was referred to this panel after his filing of a brief in *Yi Mei Li v. Mukasey*, No. 06-3422-ag, that (a) contained references to evidence not found in the administrative record; (b) misstated the petitioner's name and gender, as well as the issues to be raised in this Court; and (c) contained extensive portions apparently copied from a brief prepared by another attorney concerning a different litigant. *Compare Yi Mei Li v. Mukasey*, No. 06-3422-ag, brief filed by Mundie on Dec. 18, 2006, *with Tian-Yong Chen v. BCIS*, No. 00-4136-ag, 2003 WL 24542983, brief filed by Theodore Cox on July 21, 2003. Regarding the copying, pages 12 to 18 of Mundie's brief in *Yi Mei Li* - the bulk of the argument section - are nearly identical to pages *13 to *19 of the petitioner's brief in *Tian-Yong Chen*. As a result, some of the facts found in the *Yi Mei Li* brief (*e.g.*, that the petitioner is a member of an unsanctioned church in China and that she established her own church), and some sources cited in the brief (*e.g.*, the 1999 Department of State report on China quoted on pages 15 to 16) are not part of the record. Additionally, point headings II(B) and (C) in the table of contents of Mundie's brief refer to a claim based on a Chinese population control policy, although Mundie's client had waived that claim at her hearing before the immigration judge and the brief does not otherwise mention the claim, and heading II refers to a "Ms. Huang," although that name was corrected in the point heading in the body of the brief. The apparent copying raises the issues of whether Mundie engaged in plagiarism, whether he violated his duties to his client and the Court by presenting facts and argument that did not bear on the issues in his case, and whether he charged his client fees for services which he did not render.[1]

[1] We have not examined other briefs for evidence of copying, and leave to the discretion of the Committee the decision of whether such an examination is warranted.

6

Further review of Mundie's cases in this Court has revealed that, of the approximately 100 cases for which Mundie is listed as the attorney of record, at least 39 have been dismissed due to his failure to comply with this Court's scheduling orders.[2]   *See* Second Circuit cases docketed under 02-4450, 03-4411, 03-4739, 03-40091, 03-40110, 03-40236 (default dismissal later vacated at counsel's request and stipulation to withdraw filed), 03-40373, 03-40433 (later reinstated on motion and remanded to agency), 03-40580, 03-40709, 03-40809, 03-40820, 03-40926, 03-40956, 03-40983, 03-41006, 03-41213, 04-0573, 04-0893, 04-0903, 04-1168, 04-1765, 04-2539, 04-3669, 04-4728, 05-0420 (consolidated with 05-2809), 05-1037, 05-1050 (consolidated with 05-1094), 05-2705, 05-4215, 05-5378, 05-5953, 05-6188, 06-0021, 06-2849, 07-0697, 08-1838 (consolidated with 08-1347), 08-2449, 08-3052. Although Mundie requested and was granted extensions of time in some of the preceding defaulted cases, the final briefing deadlines in all of those cases passed without Mundie requesting an extension of time (or an additional extension of time), a stay of proceedings, leave to withdraw as counsel, or leave to voluntarily dismiss the petitions for review.

Additionally, in 15 other cases, Mundie filed his briefs, or stipulations to withdraw the cases, only after the deadlines for his briefs had passed and this Court had issued orders to show cause why the cases should not be dismissed based on his defaults. *See* Second Circuit cases docketed under 05-6290, 07-3993, 07-4092, 07-4183, 07-4269, 07-4363, 07-4499, 07-4502, 07-4631, 07-5674 (consolidated with 07-5676), 07-5675, 07-5785, 07-5786, 08-0276, 08-0443. However, even after issuance of the orders to show cause, Mundie failed to fully comply with the deadlines set forth in a number of those orders. *See* Second Circuit cases docketed under 05-6290 (stipulation to withdraw petition filed after expiration of time to respond to order), 07-3993 (brief and response to order filed one day past deadline; motion to file late granted), 07-4183 (brief filed within deadline; joint appendix filed late, after requested by Court), 07-4363 (same), 07-4499 (joint appendix received within deadline; brief filed one day late), 07-4502 (same), 07-4631 (brief filed within deadline; response to order filed later), 07-5674 (joint appendix filed within deadline; brief and motion to file late received one week later), 07-5675 (same, but brief received one month after deadline).

Finally, in eight other cases, Mundie filed stipulations to

---

[2] The number given for defaulted cases, 39, accounts only for lead cases. Consolidated cases that have not been designated as lead cases are not included in that total.

withdraw the cases with prejudice only after his briefing deadlines had passed and, in one case, in response to the Government's request for entry of default. *See* Second Circuit cases docketed under 03-4646, 03-40372, 03-41208, 04-2118, 05-2355, 07-1896, 08-0724, 08-0916.

Upon due consideration of the matters described above, it is hereby ORDERED that Steven A. Mundie is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

[Remainder of text omitted]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
By:________/s/_______________
Michael Zachary
Supervisory Staff Attorney
Counsel to the Grievance Panel

## October 2010 Report of the Committee
## on Admissions and Grievances

### REPORT & RECOMMENDATION
### In re Steven A. Mundie, 09-90016-am

### I.      Introduction

By Order dated March 3, 2009, the United States Court of Appeals for the Second Circuit ("the Court") referred Steven Mundie to this Committee for investigation of his conduct before the Court and for preparation of a report on whether he should be subject to disciplinary or other corrective measures. At the request of Mr. Mundie and his counsel, the dates for the hearing and post-hearing responses were adjourned on several occasions.

The following constitutes the Committee's report and recommendation to impose discipline on Mundie. The Committee recommends that Mundie be publicly reprimanded, that he be required to complete additional CLE in law office management, and that he be subject to the reporting requirements set out below.

### II.     This Disciplinary Proceeding

The Committee gave Mundie notice of the Court's referral by letter dated April 9, 2009. After receiving two extensions of time to respond, Mundie filed a Declaration dated July 10, 2009 in response to the Committee's notice, through his counsel, William Silverman of Greenberg Taurig LLP and Richard Maltz of Frankfurt, Kurnit, Klein & Selz, PC.

The Court's Referral Order also ordered Mundie to show cause why he should not be subject to interim suspension, pending the Committee's proceedings. By email dated June 18, 2009, the Committee asked Mundie to confirm that all of his pending cases in the Second Circuit had been transferred to another lawyer. Mundie provided that confirmation by letter dated June

1

18, 2009. Additionally, Mundie specifically addressed the issue of interim suspension in a letter dated October 8, 2009, in response to the Committee's letter dated September 8, 2009. In that letter, Mundie again confirmed that he "is not practicing before the Court while this matter is pending."[1] In light of Mundie's representations, the Committee determined that no interim suspension was necessary.

The Committee held a hearing on March 12, 2010, at which Mundie was represented by Richard Maltz. At the Committee's request, Mundie made a post-hearing submission dated March 31, 2010. Mundie provided the Committee with another post-hearing letter, dated June 14, 2010, to clarify certain errors in the March 31, 2010 submission.

The Committee's factual findings are based on Mundie's written submissions and testimony, and on the records of the Court.

## III.   Factual Background

### A.   *Mundie's Background*

During most of the time period at issue, Mundie was one of three partners at Baron, Mundie & Shelkin, P.C., a partnership that was initially formed in 2004. *See* Mundie's July 9, 2009 Declaration in response to the Court's referral order ("Decl.") ¶ 8. He has recently left the partnership to become a sole practitioner. Tr. at 49-50.

Mundie graduated from Pace Law School in 1994, and was admitted to practice law in New York in 1996 and in the Second Circuit in 2003. *Id.* ¶ 6. He is also admitted in Pennsylvania, the Southern and Eastern Districts of New York, and the First, Third, Fourth, Fifth, Sixth, Seventh, Tenth and Eleventh Circuits. *Id.* After law school, Mundie spent three years working at Amnesty International, on death penalty issues. Mundie then worked briefly as an associate for a solo practitioner, before opening his own firm in 1999. His practice focused on asylum work, which he describes as an outgrowth of his time at Amnesty. *Id.* ¶ 7. In 2004, Mundie formed a partnership with Jeffrey Baron, another immigration attorney, and in 2007 another partner, Scott Shelkin, joined the firm to handle matrimonial, real estate and bankruptcy work. Decl. ¶ 8. Mundie continues to specialize in asylum matters, as well as some general immigration work. *Id.*

Mundie has never been sanctioned by any court. He has been the subject of two complaints in the Departmental Disciplinary Committee, First Judicial Department, and an inquiry by the Executive Office for Immigration Review, all of which were dismissed without findings of misconduct.

---

[1] By letter dated August 2, 2010, Mundie sought the Committee's approval for his resumption of his practice before the Second Circuit, in order to continue the representation of a client he had represented before the immigration authorities. The Committee informed Mundie that it had no objections.

23246194v1

Mundie has been involved in pro bono activities, including several years of work with the New York City Bar's Refugee Assistance Program. In 1998 the City Bar recognized him for "outstanding service" for this work.

B. *The Court's Referral Order*

Mundie was referred to this Committee following the Court's review of his brief for the petitioner in *Yi Mei Li v. Mukasey*, 06-3422 ("the *Li* Brief"). The Court's order alleges that Mundie's brief contained numerous defects, including misstatements of the petitioner's name and the facts of the case. Moreover, the order observes that an extensive and significant portion of the *Li* Brief's legal argument, relating to Yi Mei Li's claims of religious persecution, appeared to have been copied verbatim from a brief filed by another attorney, Theodore Cox, in *Tian-Yong Chen v. BCIS*, 00-4136 ("the *Chen* Brief").

Additionally, the Court's records show that Mundie has defaulted on scheduling orders in numerous cases. The Court's referral order recites 39 cases, between 2002 and 2008, out of the 100 cases for which Mundie is attorney of record, that have been dismissed for failure to comply with scheduling orders. In another 23 cases, Mundie filed briefs or motions to withdraw only after the deadlines for his briefs and passed – and often only after the Court had issued orders to show cause why the cases should not be dismissed.

IV. **Legal Standard**

Under the Rules of this Committee,

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office, or the rules of professional conduct of any other state or jurisdiction governing the attorney's conduct. An attorney may also be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Rules of the Committee on Admissions and Grievances, Rule 4.

"A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." Fed. R. App. P. 46(c). "Conduct unbecoming a member of the bar" may include any conduct "contrary to professional standards that show[s] an unfitness to discharge continuing obligations to clients or

3

23246194v1

courts, or conduct inimical to the administration of justice." *In re Snyder*, 472 U.S. 634, 645 (1985). For "[m]ore specific guidance," we may look to "case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *Id.* at 646 n.7.

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004), *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004), *Matter of Rabinowitz*, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993), *United States v. Song*, 902 F.2d 609 (7th Cir. 1990), *Matter of Kraft*, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989), *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973). Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. The Disciplinary Rules of New York's Lawyer's Code of Professional Responsibility require that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer," D.R. 6-101(A)(3); 22 N.Y.C.R.R. § 1200.30(A)(3) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 1.3(b) (effective Apr. 1, 2009) (hereinafter "N.Y.R."). In addition, the Code's Ethical Canons require that the lawyer should represent his or her client "zealously," Canon 7-1, and that he or she "be punctual in fulfilling all professional commitments," Canon 7-38.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, we should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *See* ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

## V. The Committee's Findings

### A. *The* Li *Brief*

Mundie filed the *Li* Brief on December 18, 2006. His client sought asylum based on a claim that she feared persecution for her open practice of Christianity if returned to China. Mundie's brief contains numerous defects – notably, the table of contents misstates the petitioner's name, the brief confuses gender pronouns throughout, and the table of contents and a heading in the body of the brief incorrectly state that the Immigration Judge ruled against Li (although this error is not repeated in the text of the brief). However, the main substantive

4

problems with the brief appear in the section addressing the central legal issue in the case – whether Li had a well-founded fear of religious persecution if she were to return to China.

Mundie concedes that the "religious persecution" section of the legal argument in *Yi Mei Li* was based on Theodore Cox's brief in *Tian-Yong Chen*. Decl. ¶ 11-14. Mundie testified that he had had a long and close working relationship with Cox – in fact, Mundie had been of counsel to Cox, and had "tried perhaps dozens of cases for him." Tr. at 22. Mundie testified that he had been "tinkering" with his own brief, but "it wasn't really coming together with respect to this particular religious issue." Tr. at 23-24. Knowing that Cox "did a lot of this work," Mundie approached Cox to ask if he could "share a brief with me that I could then use as a basis for drafting a brief in a similar matter." Tr. at 24. Mundie also considered it "efficient and cost effective to use a prior brief as a model." Decl. ¶ 14. Mundie also used the *Chen* Brief's argument regarding religious persecution as a model for a number of his cases in addition to *Yi Mei Li*. Tr. at 70.

Mundie testified that he himself drafted the *Li* Brief's Statement of Facts and other sections of the argument, and the Committee's review of the brief bears that claim out. Decl. ¶ 11, 14. However, Mundie concedes that he was "careless . . . in editing" the religious persecution section. Decl. ¶ 14.

The religious persecution argument in the *Li* Brief is not an identical copy of the relevant section from the *Chen* Brief. It is clear that Mundie made some necessary revisions to tailor the language of the *Chen* Brief to the facts of *Yi Mei Li* – for instance, where the *Chen* Brief's refers to "the Roman Catholic Church," the *Li* Brief refers to "Christianity," and replaces the *Chen* Brief's references to specifically Catholic beliefs. However, Mundie also failed in a number of respects to tailor the language of the *Chen* Brief to *Yi Mei Li*'s facts – for instance, the *Li* Brief contains references to the founding of a non-government church in China, which were true of Tian-Yong Chen but not of Yi Mei Li.

Most significantly, Mundie failed to fully edit the language of the *Chen* Brief to address the most significant distinction between the two cases. To make out a claim for asylum on the basis of a well-founded fear of future persecution on religious grounds, the petitioners were required to show, *inter alia*, that the Chinese government (or other potential persecutors) was aware of the petitioners' beliefs, or could become aware of them. *See Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987). In *Tian-Yong Chen*, the petitioner alleged that the Chinese government was already aware of his Christian beliefs. He alleged that he had practiced his beliefs openly in China prior to his arrival in the United States, and that he had already been persecuted for them. By contrast, the petitioner in *Yi Mei Li* had not converted to Christianity until after her arrival in the United States: it was therefore impossible to argue that the Chinese authorities were already aware of her beliefs, and vital to show that they *could* become aware of her beliefs if she were returned.

23246194v1

It is clear that Mundie made some edits to address this issue: notably, he changed a key section in the *Chen* Brief, "China *is* aware that Mr. Chen possesses the prohibited belief," to "China *can easily become* aware that Ms. Li possesses the prohibited belief." (emphasis added). However, the section of the *Li* Brief that follows this heading is copied almost directly from the *Chen* Brief, and has not been tailored to the particular facts of *Yi Mei Li*. In words taken almost verbatim from the *Chen* Brief, the *Li* Brief states, inaccurately, that "The Chinese government is unquestionably aware of that Ms. Li actively participates in the prohibited and unsanctioned church."[2]

Despite these defects, the *Li* Brief does contains multiple references to the petitioner's intention to practice her religion openly if returned to China, which could support an inference that the authorities could become aware of her beliefs. See, e.g., *Li* Brief at 15 ("The petitioner has established that she is eligible for asylum on the basis of having been converted to Christianity, a religion she intends to practice openly even if she is forced to return to China."); *Li* Brief at 16 ("She also testified that, because of these important aspects of her faith, she would practice her religion openly even if she were forced to return to China.").

Mundie testified that he did not recall the circumstances of the filing of the *Li* Brief. He had examined his records and his computer files in an attempt to confirm what had happened, but had been unable to do so. Tr. at 27. He speculated that "[i]t would seem to me that maybe I didn't save a final version, so a version that was not quite ready for printing got printed instead." *Id.*

At the Committee's request, Mundie submitted copies of every brief he was able to identify from his records as having been based in part on the *Chen* Brief's argument regarding religious persecution.[3] Mundie provided four such briefs: *Chao Jin Lin*, 06-4094; *Cheng Hua*

---

2 In full, the relevant section of the *Chen* Brief reads:

> The second requirement of *Mogharrabi* has been satisfied. The Chinese government is unquestionably aware of that Mr. Chen actively participates in the prohibited and unsanctioned church. In fact he was detained, interrogated and beaten for his participation. The government sought to arrest him yet again, which was the reason he fled China. This conclusively establishes the Government's awareness of Mr. Chen's beliefs.

The relevant section of the *Li* Brief reads:

> The second requirement of *Mogharrabi* has been satisfied. The Chinese government is unquestionably aware of that Ms. Li actively participates in the prohibited and unsanctioned church. This conclusively establishes the Government's awareness of Ms. Li's beliefs.

3 Mundie originally submitted six briefs in his response to the Committee's request. See Mundie's Letter dated

6

*Zhen*, 07-5373; *Zheng En Yu*, 07-1246; and *Wei Xing Lin*, 05-2706. The Committee has reviewed those briefs. In each case, it appears that Mundie properly tailored the *Chen* Brief's language to the facts of the case – editing it very substantially where necessary. The briefs are generally well-drafted. Additionally, the Committee has reviewed a sample of Mundie's other briefs, including his briefs in *Yuen Jin*, 05-5485; *Hotaj*, 03-40433; *Gao*, 07-4269; and *Nugdalla*, 06-2849. These briefs also appear generally sound.

The Committee finds Mundie's explanation of the circumstances surrounding the filing of the *Li* Brief credible. In light of Mundie's testimony and the evidence of his other briefs, the Committee finds that Mundie's filing of the defective *Li* Brief was an inadvertent error, albeit a careless one. The Committee further finds that it was an isolated incident, and not representative of Mundie's usual practice.

The Court's Referral Order asks the Committee to consider whether Mundie engaged in plagiarism. Since it appears that Mundie intended to adapt the *Chen* Brief to the facts of his case, the Committee finds that his use of the *Chen* Brief as an initial model does not amount to plagiarism.

The Court's Referral Order also asks the Committee to consider whether Mundie charged his client for services not rendered. The Committee finds that Mundie did not intentionally charge his client for services not rendered; rather, it appears that he intended to properly revise the language of the *Chen* Brief to reflect the facts of her case, though due to a careless filing error failed to do so. Moreover, Mundie has taken steps to contact his client in an attempt to refund her fees. Tr. at 73.

At Mundie's hearing, the Committee also noted that the *Li* Brief did not address another important issue. The BIA decision under review was based in part on the BIA's finding of an inconsistency in the petitioner's testimony. The *Li* Brief does not address that finding. Mundie testified that he had made a conscious tactical decision not to focus on that issue, but to concentrate instead on what he argued was the procedural irregularity of the BIA's decision. The Committee finds Mundie's explanation credible, and cannot second-guess his tactical decision.

Mundie further testified that he had become aware of the defective filing of the *Li* Brief after it was filed, but before the Court's decision. Tr. at 29. He explained that he decided not to take corrective action – such as attempting to file an amended brief – because the brief presented the relevant facts. *Id.* Again, the Committee finds Mundie's testimony on this issue credible. His decision not to seek to correct the brief may be questioned and criticized. As noted above,

---

March 31, 2010. Of these six briefs, one was the *Li* Brief itself, submitted in error. Another was a brief in *Bao Fa Yang*, 03-4644. The *Bao Fa Yang* brief appeared to have been copied almost verbatim from the *Chen* Brief, including even the Statement of Facts. On further investigation, Mundie's counsel clarified that that brief was a preliminary draft, and had never been filed; the brief that was actually filed in that case, by Mundie's partner Jeffrey Barron, bore no resemblance to the *Chen* Brief.

7

however, despite its clear defects, the *Li* Brief did contain statements addressing the petitioner's intention to practice her religion openly if returned to China.

Finally, the Committee notes that it is very unlikely that the defects in the *Li* Brief caused any prejudice to Mundie's client, in light of the Court's resolution of the matter. Significantly, the Court found that Li had been unable to show that Christians were subject to a nationwide pattern of persecution in China – a sufficient ground to deny the petition, and one which was unaffected by the defects in the *Li* Brief.

### B.     *Failure to Comply with Scheduling Orders*

Of approximately 100 cases for which Mundie was listed as attorney of record filed between 2002 and 2008, thirty-eight were dismissed for default on scheduling orders.4  The majority of these defaults took place between 2004 and 2006.  One default occurred in 2007, and three in 2008.

Mundie testified that in the majority of these cases, his default was intentional.  The Committee finds Mundie's testimony on this issue credible.  Mundie explained that it was his usual practice to file petitions for review before he had been able to obtain the administrative record, in order to ensure that the filing was timely and that his clients obtained a stay of deportation.  Decl. ¶ 19-20, Tr. at 32-34.  On obtaining the administrative record, "in many instances" he discovered that his clients had no colorable claim.  Decl. ¶ 19.  In such cases, he believed it was acceptable not to withdraw, but to wait for the petition to be dismissed.  Decl. ¶¶ 23-24.  He also believed that this strategy was in the best interests of his clients:

> I felt that it was always best to kind of stay in the loop.  So the idea
> of withdrawing as counsel and sort of leaving the client out there –
> often they move around.  If there was any sort of mailing, it
> wouldn't reach them.  So that didn't seem to be the right thing.  It
> was better to be in the case and then I would at least be able to
> have some handle on it.

Tr. at 36-37.

Mundie testified that he discussed this strategy with his clients, and obtained their consent. Tr. at 37.  In a number of cases, he continued to act on his clients' behalf after the defaults, reopening cases before the immigration authorities on the basis of changed personal circumstances. Tr. at 39-40.

Mundie also conceded that there was "dysfunction" within his law office and a heavy caseload contributed to the defaults. Tr. at 83-84.  In at least one case, *Nugdalla v. Gonzales*, No. 06-2849-ag, Mundie concedes that his default was an unintentional oversight.  In this case,

---

4 The Court's Referral Order lists thirty-nine defaults. In one of these, *Lin v. Ashcroft*, 03-40580, it appears from the Court's records that Mundie filed a timely request for an extension, which was not ruled on.

8

23246194v1

Mundie sought to take corrective measures, moving to reinstate the petition. He conceded in his motion for reinstatement that the default was due to his own oversight. *See* Motion for Acceptance of Petitioner's Brief/Joint Appendix and Reinstate the Petition[] for Review, *Nugdalla v. Gonzales*, 06-2849-ag (May 8, 2007). Mundie testified that he made that concession partly in the hope that it might support an argument for ineffective assistance of counsel by a subsequent attorney. Mundie's motion for reinstatement was denied, but the case was subsequently reopened on motion to the agency. Tr. at 88. On August 11, 2010, the Immigration Judge granted Nugdulla asylum. *See* Mundie's Letter to the Committee, dated August 16, 2010.

In fifteen additional cases, Mundie filed his briefs, or stipulations to withdraw the cases, only after the deadlines for his briefs had passed and the Court had issued orders to show cause why the cases should not be dismissed based on his defaults. In nine of those cases, Mundie failed to comply with the new deadlines set by the Court's orders to show cause. The great majority of these failures to comply with scheduling orders occurred in 2008. Mundie concedes that these failures were due to his inability to manage his large caseload. Decl. ¶ 25. Tr. at 43-44. In addition, in a number of cases between 2004 and 2008 Mundie filed stipulations to withdraw only after the briefing deadlines had passed; this conduct too appears to reflect Mundie's difficulty managing his caseload.

C.     *Practicing in the Second Circuit Prior to Admission*

Mundie was admitted to the Second Circuit on July 16th, 2004. Prior to his admission, he filed six petitions - *Yang v. INS*, 02-4450-ag, *Djurasevic v. INS*, 03-4411, *Alabede v. Ashcroft*, 03-4739, *Zhen v. Ashcroft*, 03-40091, *Yang v. Ashcroft*, 03-40110, and *Gojcaj v. Ashcroft*, 03-4646. Mundie testified that he believed that the Court's rules permitted an attorney to file a petition, though not to file a brief or appear at oral argument, prior to admission. The Committee finds Mundie's testimony credible, and his confusion excusable. *See In re Yan Wang*, No. 08-9039-am, 2010 U.S. App. LEXIS 14699 (July 19, 2010).

D.     *Aggravating and Mitigating Factors*

There are aggravating factors present here. While the defects in the filing of Mundie's *Li* Brief appear to be an isolated issue, his failures to comply with scheduling orders are a pattern stretching over a period of many years. *See* ABA Standards § 9.22(c). Additionally, he is an experienced practitioner who should have recognized and addressed his problems sooner than he did. *See* ABA Standards § 9.22(i).

There are also mitigating factors. Mundie was cooperative with the Committee's proceedings. *See* ABA Standards § 9.32(e). He showed sincere remorse, and an intention to remedy these problems in the future. *See* ABA Standards § 9.32(e), (l). He has reduced his caseload to what he believes to be a manageable level, and he has instituted a new calendaring system. Tr. at 50-52. He will have each of his briefs proofread by another person before filing to avoid a repetition of the defective filing of the *Li* Brief. Tr. at 59. He has taken steps to contact

9

Yi Mei Li in an attempt to refund her fees. Tr. at 73. His conduct was not the result of a dishonest or selfish motive. *See* ABA Standards § 9.32(b).

Mundie also has a record of pro bono activity, and it appears from the character letters submitted on his behalf that he is well-regarded in the legal community. *See* ABA Standards § 9.32(g). He has no record of prior discipline. *See* ABA Standards § 9.32(a).

## VI. Recommendation

Mundie's conduct warrants discipline. The evidence shows a long-running pattern of failures to comply with scheduling orders; and while Mundie's conduct with respect to the *Li* Brief was isolated and inadvertent, his failure to take proper care in that case had the potential to prejudice his client. The Committee finds, by clear and convincing evidence, violations of Fed. R. App. P. 46(c), D.R. 6-101(A)(3), and N.Y.R. 1.3(b).

Under all of the circumstances, the Committee recommends that Mundie be publicly reprimanded. In addition, he should be required to complete no fewer than six hours of CLE in law office management, from a CLE provider accredited by the bar of New York, in addition to the required hours of CLE.

Finally, Mundie should be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which: (1) a submission is not filed or is filed out of time; or (2) an application is made for permission to make a late filing only after the due date has passed. It is expected that these reports will show no such instances absent exigent circumstance, which circumstances should be attested to under oath in the respective report.

In the event that a report is not timely filed or reveals deficiencies not justified by exigent circumstance, the Committee may recommend the imposition of additional discipline, including but not limited to further suspension from the Second Circuit, without hearing further testimony.

The following reporting periods and deadlines shall be observed. The report for each reporting period shall be mailed to the Committee Secretary within ten (10) days of the end of that reporting period. The first reporting period shall commence 10 days after the Committee's recommendation is mailed to Mundie and shall end six months after the Second Circuit issues its order of disposition in this matter. Each of the three subsequent reporting periods shall be for a reporting period commencing at the end of the prior reporting and ending six months later. A total of four reports shall be prepared and mailed to the Committee Secretary.

10