In re Payne

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2012

(Decided: January 25, 2013)

Docket No. 10-90019-am

_____

In re Douglas Payne,

*Attorney*.


_____


Before:  Cabranes, Sack, and Wesley, Circuit Judges.


This Court's Committee on Admissions and Grievances has recommended that Douglas Payne, an attorney admitted to the bar of this Court, be disciplined.  We adopt the Committee's recommendations and findings of fact, with certain exceptions, and publicly reprimand Payne for his misconduct in this Court.

For Douglas Payne:                    Douglas Payne, Esq.,
                                      New York, New York.

**PER CURIAM:**

Pursuant to this Court's Local Rule 46.2, it is hereby **ORDERED, ADJUDGED, AND DECREED** that Douglas Payne is PUBLICLY REPRIMANDED for the misconduct described in the appended report of this Court's Committee on Admissions and Grievances ("the Committee"), except as discussed below.

## I. Summary of Proceedings

By order dated March 11, 2010, this Court referred Payne to the Committee for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures. During the Committee's proceedings, Payne had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing, which was presided over by Committee members Mary Jo White and Terrence M. Connors. Payne proceeded *pro se* before the Committee. Thereafter, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations, and Payne filed a response to the Committee's report. Those documents are each made public as appendices to this opinion.

In its report, the Committee concluded that there was clear and convincing evidence that Payne had engaged in misconduct warranting the imposition of discipline. *See* Report at 8. Specifically, the Committee found that Payne had, *inter*

2

*alia*: (1) defaulted on scheduling orders in fourteen cases, resulting in their dismissal, although he succeeded in reinstating two of them; (2) filed stipulations to withdraw a number of appeals only after his briefing deadlines had passed; and (3) filed a deficient brief in *Shao Qin Zheng v. Holder*, 322 F. App'x 6 (2d Cir. 2009) (summary order), which resulted in this Court finding certain dispositive arguments waived. *See id.* at 4-7. After considering various aggravating and mitigating factors, the Committee recommended that Payne be publicly reprimanded and required to attend at least six hours of continuing legal education ("CLE") classes in appellate immigration law. *See id.* at 7-8.

In his response to the Committee's report, Payne disagreed with several of the Committee's findings and requested that this Court issue a private, rather than public, reprimand.

**II.  Discussion**

**A.  Contents of a Response to a Committee Report**

Neither the Federal Rules of Appellate Procedure nor this Court's local rules specify the format or contents of an attorney's response to a Committee report recommending that the Court impose disciplinary or other corrective measures against the attorney. Although we presently see no need for a comprehensive rule governing the format or contents of such a response, attorneys must adhere to several basic, commonsense

3

rules.

First, evidence and arguments may not be raised in the response filed in this Court unless they have first been raised before the Committee, except where good cause exists for raising the new evidence or arguments for the first time in the response.[1] *See In re Warburgh*, 644 F.3d 173, 179 (2d Cir. 2011) ("Permitting defenses and issues to be raised for the first time after the Committee's report has been filed with the Court would require the Court either to decide issues that were never analyzed by the Committee—the very body charged with performing such an analysis in the first instance—or to remand the matter to the Committee for further proceedings."). Good cause may exist, for example, when the Committee report itself presents evidence or issues for the first time in the proceedings.[2]

_____

[1] Both this Court's local rules, and the Committee's initial notice to Payne, required his response to the misconduct allegations to include, *inter alia*, "(d) a statement of the alleged facts that are controverted; (e) the basis on which any controverted facts are disputed; and (f) any additional facts that are relevant to the Committee's determinations on the need for discipline or other corrective measures, including facts relevant to defense or mitigation." Second Cir. Local Rule 46.2(b)(3)(D)(ii); Committee's Notice of Referral (Tab B of Record) at 2.

[2] For present purposes, we need not define the scope of "good cause" or identify other possible exceptions to the waiver rule. However, under proper circumstances, an attorney might be able to demonstrate that the attorney's failure to first present specific evidence or arguments to the Committee was due to excusable neglect, or that manifest injustice would result if the

4

When a respondent attorney wishes to rely on new evidence in this Court, the attorney must request leave to supplement the record and proffer the new evidence in admissible form. The request to supplement the record can be filed prior to, or with, the attorney's response to the Committee's report. New arguments must be clearly identified in the response to the Committee's report. With regard to both new evidence and new arguments, the attorney must explain, by detailed declaration made under penalty of perjury, why good cause exists for raising the new evidence or arguments for the first time in the response.

Second, all arguments and statements of fact must be supported by proper citations to the record. *Cf.* Fed. R. App. P. 28(a)(9)(A)(requiring argument in an appellant's brief to contain, *inter alia*, "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). Although we do not require an attorney's response to comply with all aspects of Rule 28, the need for citations to the record should be clear to any attorney filing a document with a Court. Citations to the record serve several important functions, including informing the reviewing court that a fact or argument was indeed first raised in the underlying proceeding, and enabling

Court did not consider such evidence or arguments.

5

the reviewing court to quickly find the relevant portions of the record.

In the present case, Payne's arguments required review of a record several hundred pages long.  While we do not penalize Payne for his lack of citations, since no explicit requirement is found in our rules, or in earlier decisions of the Court, this opinion serves as notice to the bar that proper citations are required in all future filings in disciplinary proceedings and that their absence may result in a finding of waiver or other adverse consequence.

**B.  Default in *Jin Xia Lin v. Ashcroft*, No. 04-6180**

In *Jin Xia Lin v. Ashcroft*, Payne failed to file an appellant's brief in accordance with this Court's scheduling order, causing the dismissal of the case based on that default, and then failed to contact the Court until nearly three years later, when he filed a motion for reinstatement, which was denied.  *See Jin Xia Lin v. Ashcroft*, No. 04-6180-ag (2d Cir. Jan. 6, 2006) (order dismissing appeal for failure to comply with scheduling order)*; id.* (2d Cir. Nov. 10, 2008) (motion for reinstatement)*; id.* (2d Cir. Dec. 22, 2008) (order denying reinstatement).  Payne explained to the Committee and this Court that he allowed the default dismissal to occur due to inadvertence, his inability to contact his client, and his assessment that the case lacked merit, and that he attempted to

6

reinstate it nearly three years later based on renewed contact with the client and a new assessment of its merits. *See* Transcript (Tab E of Record) at 9-14; Response to Notice of Referral (Tab C) at 3-4; Response to Committee Report at 1.

The Committee found Payne's "various explanations for failing to contact the Court prior to his motion to reinstate to be lacking in credibility." Report at 4-5. While Payne now argues that this finding is "flawed," he does not identify any specific flaw and, instead, essentially repeats the explanation he gave to the Committee. Response to Committee Report at 1. He does not explain why the Committee's credibility determination is not supported by the record, or cite to evidence in the record supporting his argument that the Committee was incorrect.[3]

---

[3] Payne's statement in his response to the Committee's report that he "certainly failed to file petitioner's brief on time because of inadvertence," Response to Committee Report at 1, may refute the part of the Committee's report suggesting that he had informed the Committee that the default was intentional, *see* Report at 4. However, any understanding by the Committee that Payne had changed his explanation for the default flowed directly from Payne himself: while his November 2008 motion for reinstatement stated that the default was unintentional, *see Jin Xia Lin v. Ashcroft*, No. 04-6180-ag (2d Cir. Nov. 10, 2008) (motion for reinstatement) at ¶¶ 3-4, his written response to the Committee and his hearing testimony focused on his determination that the case was not worth pursuing and did not mention inadvertence (although Payne may have been implicitly adopting the assertions from the November 2008 motion), *see* Transcript (Tab E of Record) at 9-14; Response to Notice of Referral (Tab C) at 3-4. Even if we accept Payne's argument concerning inadvertence, it does not focus on the Committee's primary point that he was not credible as to his reasons for not contacting the

We have given "particular deference" to the factual findings of district judges and immigration judges where those findings were based on demeanor-based credibility determinations, and somewhat lesser deference to credibility findings based on an analysis of a witness's testimony. *See United States v. Cuevas*, 496 F.3d 256, 267 (2d Cir. 2007) ("Factual findings based on the testimony and observation of witnesses are entitled to 'particular deference.'") (quoting *United States v. Morrison*, 153 F.3d 34, 52 (2d Cir. 1998)); *United States v. Mendez*, 315 F.3d 132, 135 (2d Cir. 2002) ("Where the district court's factual findings are premised upon credibility determinations, we grant particularly strong deference to those findings."); *Jin Chen v. U.S. Dep't of Justice*, 426 F.3d 104, 113 (2d Cir. 2005) ("We give particular deference to credibility determinations that are based on the adjudicator's observation of the applicant's demeanor, in recognition of the fact that the [immigration judge's] ability to observe the witness's demeanor places her in the best position to evaluate whether apparent problems in the witness's testimony suggest a lack of credibility or, rather, can be attributed to an innocent cause such as difficulty

Court during the nearly three-year period prior to his motion for reinstatement. Finally, any error by the Committee concerning *Jin Xia Lin* would be harmless, since permitting a default dismissal through negligence (which Payne concedes) would nonetheless warrant the recommended discipline when weighed in combination with the other conduct described by the Committee.

understanding the question.. . . On the other hand, we grant lesser deference to credibility determinations that are based on analysis of testimony as opposed to demeanor.").

We find that the Committee members who presided over the hearing in this case, who are experienced attorneys appointed by the judges of this Court, should be accorded the same deference for their credibility determinations.[4]  *See In re*

---

[4]  We note that the increasing complexity of the law in our circuit relating to attorney discipline has become necessary to confront attorney misconduct in the context of petitions for review of decisions of administrative agencies.  Attorneys in such matters often do not practice before the state courts, which are primarily responsible for the supervision of the conduct of members of the bar.  *See* Judith A. McMorrow, *The [F]Utility of Rules: Regulating Attorney Conduct in Federal Court Practice*, 58 SMU L. Rev. 3, 9 (2005) ("[S]tate courts, with their strong and historical role in regulating attorneys, care deeply about maintaining control over the rules—the formal processes—governing attorney conduct."); *see also In re Snyder*, 472 U.S. 634, 645 n.6 (1985) ("The federal court is entitled to rely on the attorney's knowledge of the state code of professional conduct applicable in that state court; the provision that suspension in any other court of record creates a basis for a show cause hearing indicates that Rule 46 anticipates continued compliance with the state code of conduct."); *post* note 7 (observing that the conduct at issue in this case is governed by the New York Code of Professional Responsibility).

Ordinarily, federal courts operate on the basis of "reciprocal discipline."  *See* Second Circuit Local Rule 46.2(c)(2) ("When the court receives a copy of an order entered by an attorney disciplinary authority disbarring or suspending an attorney from practice, the clerk enters an order disbarring or suspending the attorney from practice before this court on comparable terms and conditions."); *see also In re Roman*, 601 F.3d 189, 191-95 (2d Cir. 2010) (explaining the applicable legal standards under Second Circuit Local Rule 46.2(c)(2)).

Indeed, this Court's three-judge Grievance Panel was originally assembled ad hoc, primarily to assess challenges to sanctions imposed through reciprocal discipline.  On March 12,

*Dale*, 87 A.D.3d 198, 200 (4th Dep't 2011) ("[W]hen the resolution of issues in [an attorney] disciplinary proceeding depends upon the credibility of witnesses, a referee's findings are entitled to great weight." (internal quotation marks omitted)); *In re Cohn*, 194 A.D.2d 987, 990 (3d Dep't 1993)("We are ... loathe to disturb such conclusions [crediting a client's testimony over the attorney's] as the Referee is in the best position to assess credibility."); *In re Somers*, 50 A.D.2d 396, 397 (1st Dep't 1976)("since the prime issue on this charge depends on the credibility of the witnesses, we give great weight to the findings of the Referee, who had the first-hand opportunity to judge them and to evaluate the testimony adduced").[5]

---

2007, the Second Circuit announced the formation of the Court's Committee on Admissions and Grievances, consisting of attorneys appointed by the Court, which investigates and files recommendations on attorney discipline matters referred to it by the Grievance Panel. Press Release, United States Court of Appeals for the 2d Circuit, Second Circuit Announces New Committee on Admissions and Grievances (Mar. 12, 2007); *see also* Second Circuit Local Rule 46.2(b). The Committee helps "maintain high ethical standards" in light of the increasing burden of attorney grievances in our Circuit. Press Release, United States Court of Appeals for the 2d Circuit, Second Circuit Announces New Committee on Admissions and Grievances (Mar. 12, 2007).

[5] *See also Florida Bar v. D'Ambrosio*, 25 So. 3d 1209, 1215 n.4 (Fla. 2009)(stating "that because the referee [who conducted the attorney disciplinary hearing] is in the best position to judge the credibility of witnesses, his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect," and that "[t]his burden cannot be met merely by pointing to contradictory evidence when there is competent, substantial evidence in the record supporting the referee's findings"); *In re Disciplinary Proceedings Against*

In the present case, the Committee did not find credible Payne's explanation for not contacting the Court in the nearly three-year period between his default in *Jin Xia Lin* and the filing of his motion to reinstate. *See* Report at 4-5. Although Payne challenges that credibility determination, he simply repeats the rejected explanation without suggesting why it necessarily should have been credited by the Committee. Response to Committee Report at 1. Additionally, the Committee members who presided over the hearing had the ability to observe and evaluate Payne's voice and demeanor, which was central to the credibility finding.[6] Under these circumstances, we defer to the Committee's finding.

**C.  Default in *Xue-Dong Zhou v. Ashcroft*, No. 04-3994**

Regarding the default dismissal in *Xue-Dong Zhou v. Ashcroft*, Payne states the following in his response to the Committee's report: (a) the petitioner discharged him as counsel in August 2005, prior to the deadline for his brief; (b) as the deadline approached and no new attorney appeared for the petitioner, he contacted the petitioner to see if he wanted

*Lucareli*, 235 Wis.2d 557, 572-73, 611 N.W.2d 754, 762 (Wis. 2000)(in appeal from referee's attorney disciplinary report, holding that the "reviewing court defers to the finder of fact on matters decided on the basis of witness credibility, absent an erroneous exercise of discretion or an error of law").

[6] Committee member White presided over the hearing in person, while Committee member Connors attended by telephone. See Transcript at 2.

Payne to file an extension motion, and the petitioner "specifically authorized" the filing of the motion, which was Payne's last act for the petitioner; and (c) by implication, the later default dismissal was the responsibility of the petitioner since Payne's discharge preceded that final default. *See* Response to Committee Report at 2, 9.

However, Payne's prior statements to the Committee about these circumstances omitted the second point: in his response to the Committee's notice of referral, he merely indicated that he was not responsible for the default since he had been discharged by his client prior to the due date for the brief. *See* Response to Notice of Referral at 5. Further, in his hearing testimony, he stated, when asked why he had sought an extension after his discharge, "I guess simply just to give [the petitioner] an opportunity to have another counsel come in." Transcript at 20. Thus, in contrast to his present position, he never informed the Committee that the petitioner had authorized him to file the motion despite the earlier discharge. Under these circumstances, it is hard to fault the Committee for finding Payne had violated the disciplinary rules by continuing to represent a client after being discharged. *See* Report at 8.

We could treat Payne's failure to present his current argument to the Committee in the first instance as a waiver of the argument. *See Warburgh*, 644 F.3d at 179; Second Cir. Local

12

Rule 46.2(b)(3)(D)(ii).  However, even if we credit Payne's belated argument, he still is conceding problematic conduct: At no time did he seek the Court's approval to withdraw as counsel or advise the Court that he had been discharged as counsel.  As a result of his failure to formally withdraw, subsequent Court communications continued to be directed to Payne and not the petitioner, leaving open the questions of whether Payne forwarded those subsequent communications to the petitioner and whether the petitioner was aware that the case later went into default and was dismissed.  Even if Payne vigilantly passed along all such communications, the delays inherent in forwarding a former client's mail puts the former client at risk of not timely receiving notice of important developments in his case.

### D.  Late Stipulations to Withdraw Case

Concerning the Committee's finding that Payne had "filed stipulations under Fed. R. App. P. 42(b) to withdraw [nine] cases with prejudice only after the briefing deadlines had passed," Report at 6, Payne responds that the Committee's finding is "generally inaccurate" because the United States Attorney's Office filed those stipulations after he had signed them, and that he had signed "the majority of these stipulations at or prior to the deadlines," Response to Committee Report at 2.  However, only two of the nine

13

stipulations indicate that Payne had signed them on or prior to the briefing deadlines. *See Chun-Jin Lin v. Ashcroft*, No. 03-41134 (brief due Jan. 16, 2006; stipulation signed Jan. 13, 2006); *Fusong Wang v. Ashcroft*, No. 04-2695 (brief due Apr. 8, 2005; stipulation signed Apr. 8, 2005).

In any event, an attorney does not satisfy a filing deadline by *signing or dating* the relevant document prior to the deadline; he satisfies the filing deadline by *filing* prior to the deadline. *See* Fed. R. App. P. 25(a)(2)("filing is not timely unless the clerk receives the papers within the time fixed for filing," except that a brief or appendix is timely filed if mailed to the clerk "on or before the last day for filing"). Moreover, counsel of record cannot outsource his obligation to comply with this Court's scheduling orders. The United States Attorney did not violate Payne's filing deadlines —*Payne* violated them, since his obligation under this Court's scheduling orders continued after he sent the stipulations of dismissal to the Government. If there was any reason to believe a stipulation might not be filed prior to the deadline for his brief, Payne's obligation was to (a) seek an extension of time or stay of proceedings, (b) file his brief, or (c) request guidance from the Court. Simply ignoring the deadline, or assuming another party will fulfill that obligation, is not an option.

14

## E.  Intentional Prejudice to Clients

Payne challenges the Committee's finding that Payne had intentionally prejudiced or damaged his clients in fourteen cases in which he defaulted on scheduling orders and in nine cases in which he filed stipulations to withdraw the case with prejudice after briefing deadlines had passed, in violation of New York Disciplinary Rule ("D.R.") 7-101(A)(3).[7]  Report at 5-6.[8]  Payne argues that this finding is not supported by the record and that his defaults resulted from inadvertence or

---

[7]  The conduct at issue is governed by the disciplinary rules of the New York Code of Professional Responsibility, which was superseded as of April 1, 2009 by the New York Rules of Professional Conduct.  The rule cited by the Committee, D.R. 7-101(A)(3), states that "[a] lawyer shall not intentionally: ... 3. Prejudice or damage the client during the course of the professional relationship, except as required under DR 7-102(B) or as authorized by DR 2-110."  Disciplinary Rules 7-102(B) and 2-110 are not relevant to the present issue.  The current rules contain a provision that is similar to D.R. 7-101(A)(3).  *See* N.Y. Rule of Prof'l Conduct 1.1(c) ("A lawyer shall not intentionally: (1) fail to seek the objectives of the client through reasonably available means permitted by law and these Rules; or (2) prejudice or damage the client during the course of the representation except as permitted or required by these Rules.").

[8]  The fourteen cases in which Payne defaulted were docketed as 03-4323-ag, 03-40020-ag, 04-1021-ag, 04-2070-ag, 04-2413-ag, 04-3040-ag, 04-3968-ag, 04-3994-ag, 04-4218-ag, 04-4871-ag, 04-5375-ag, 04-6039-ag & 05-2686-ag (consolidated), 05-5094-ag, and 05-5224-ag.  The nine cases in which Payne filed stipulations to withdraw the case with prejudice after briefing deadlines had passed were docketed as 03-4018-ag, 03-41134-ag, 04-1559-ag, 04-2838-ag, 04-2695-ag, 04-3501-ag, 04-4092-ag, 04-5933-ag, and 04-6123-ag.

15

instructions from clients not to file their briefs.  Response at 2.

We agree with the Committee that Payne's failure to file briefs was intentional in those cases where he had lost contact with clients or where clients had instructed him not to file a brief.  Additionally, to the extent Payne caused the dismissal of cases by defaulting without his clients' consent, those clients were prejudiced, even if their cases appeared to lack merit, as they were "depriv[ed] ... of review by a panel of Article III judges" and the resulting "satisfaction, consolation, or sense of finality from knowing that the loss on appeal resulted from the reasoned decision of three judges rather than from their attorney['s] default." *In re Fengling Liu*, 664 F.3d 367, 373 (2d Cir. 2011) (per curiam).  However, the record does not contain clear and convincing evidence that Payne had *intentionally prejudiced or damaged* his clients.[9] Instead, we find that Payne neglected legal matters entrusted

---

[9] Although we assume that the "intentional" element of D.R. 7-101(A)(3) requires a finding that the attorney knowingly caused prejudice or damage to a client, we would reach the same conclusion even if that word encompassed a lesser *mens rea*, such as recklessness.  *Cf. In re Flynn*, 39 A.D.3d 116, 118 (1st Dep't 2007) (noting, in adopting referee's and hearing panel's findings in attorney disciplinary proceeding, that the referee had rejected charges under D.R. 7-101(A)(3) because, despite causing prejudice to the client, there was no evidence that the attorney had done so intentionally or with "ill will, which is implied by a claim of intentionally prejudicing a client"(internal quotation marks omitted)).

to him, in violation of D.R. 6-101(A)(3).

## F. Defective Briefing in *Shao Qin Zheng v. Holder*, No. 08-1965

In his response to the Committee's findings that his briefing in *Shao Qin Zheng* was defective, Payne "diverge[s]" from the explanation he provided to the Committee and now presents to us a somewhat new analysis of that case and his brief. Response to Committee Report at 3. We find Payne's argument barred for two reasons.

First, Payne's revised argument was not presented to the Committee in the first instance, and Payne has not shown good cause for failing to do so. While we appreciate that the revisions in his argument are based on his "further reading and reflection" on the administrative agency decisions, *id.*, that does not, by itself, constitute good cause for presenting a new argument at this stage of the proceedings.

Second, in any event, Payne's arguments concerning *Shao Qin Zheng* in the present disciplinary proceeding constitute a direct challenge to this Court's prior merits decision in that case, which we cannot entertain. Panels of this Court are "bound by the decisions of prior panels until such time as they are overruled either by an *en banc* panel of our Court or by the Supreme Court." *In re Zarnel*, 619 F.3d 156, 168 (2d Cir. 2010) (internal quotation marks omitted). Although the present panel, known as the Grievance Panel under this Court's local

17

rules, is charged with presiding over this Court's disciplinary proceedings, those rules give this panel no more authority to revisit a prior panel's decisions than any other three-judge panel of this Court. Thus, as a general matter, when a disciplinary charge is based on a prior decision of another panel of this Court, neither the charged attorney, nor the Committee, nor this panel is free to revisit the issues disposed of in that prior panel decision.

While there may be unusual cases where constitutional concerns require the Grievance Panel to revisit, in some manner, a prior panel's decision, the present case does not present any such concerns. As a result, we reject Payne's challenge to the Committee's findings concerning his briefing in *Shao Qin Zheng* and conclude that those findings are supported by clear and convincing evidence.[10]

---

[10] Payne's disagreement with the prior panel's decision should have been addressed in a petition for panel or *en banc* rehearing or a petition to the Supreme Court for a writ of certiorari. However, we acknowledge that situations may arise where an attorney, through no fault of his or her own, is unable to request rehearing or certiorari in the underlying case. For example, the client may decline to file, or to raise the relevant issue in, a petition for rehearing or certiorari, or the client and/or attorney may lack standing to do so (particularly if the decision merely criticized the attorney or rejected an appellate argument without sanctioning the attorney). *Cf. Keach v. County of Schenectady*, 593 F.3d 218, 226 (2d Cir. 2010)("an attorney may appeal a decision where the district court imposes a tangible sanction or makes an express finding that a lawyer has committed specific acts of professional misconduct, but not where the court has engaged in ... routine judicial commentary or criticism "). In the present case, there is no suggestion that Payne could not have requested rehearing or certiorari.

18

## G.  Mitigating and Aggravating Factors

We adopt all of the mitigating factors noted by the Committee, and decline to consider additional mitigating factors raised by Payne for the first time in his response to the Committee's report, since he has not shown good cause for not raising them before the Committee.  We also reject his suggestion that the loss of client contact, which left him unable to proceed with a number of cases, should be considered a mitigating factor in the context of his defaults.  Response to Committee Report at 5-6.

While we recognize the difficulties resulting from a transient clientele, counsel may not end the representation of a client without taking affirmative action, or permit the termination of an appeal by allowing its dismissal for lack of prosecution.  Depending on the precise circumstances, the proper course of action would have been to affirmatively seek, prior to any applicable deadline: (a) an extension of time, stay of proceedings, or withdrawal of the case without prejudice to reopening by a specified deadline, if Payne

Furthermore, the Grievance Panel also may be able to reach issues that are related to, but not squarely addressed by, a prior panel's decision.  For example, an attorney whose argument in a prior case was held by the Court to be frivolous generally cannot ask this panel, in a later disciplinary proceeding, to find the argument nonfrivolous, but is free to explain the mitigating circumstances that led him to make the frivolous argument.  Payne does not make any such mitigation argument.

19

believed that the client might resurface and want to proceed with the case; (b) leave to withdraw as counsel; (c) leave to withdraw the case without prejudice; or (d) guidance from the Court.

We acknowledge the evidence of good reputation and character Payne submits in the form of a complimentary internet review of his practice by a former client. However, we are unable to accord it weight as it is unsworn, unverifiable (since the client-reviewer was anonymous), and otherwise lacking any indicia of reliability.[11]

Furthermore, we reject Payne's argument that he should not have been charged with misconduct for defaulting on briefing schedules when the then-existing rules governing the filing of briefs made no mention of disciplinary consequences for untimely filing, and that this lack of notice should be considered a mitigating factor. Response to Committee Report at 6-7. To the contrary, it is an elementary fact and expectation of legal practice that an attorney who fails to

---

[11] The internet review appears to have been posted online at least one month prior to issuance of the Committee's report. For present purposes, we assume that, despite due diligence, Payne did not discover this evidence in time to present it first to the Committee. During the Committee hearing, Payne declined to present witnesses who could testify as to his reputation and character, but mentioned an attorney and an immigration judge who had a good opinion of him. *See* Transcript at 3, 4-9. This evidence is not mentioned in the Committee's discussion of mitigating factors, presumably because it is inadmissable hearsay.

abide by a court rule or order may be subject to sanctions or other adverse consequences. *See* Fed. R. App. P. 46(c)("A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule."); *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991) ("Parties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their peril."); *see also Maness v. Meyers*, 419 U.S. 449, 458 (1975)("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.").[12]

We also adopt the Committee's findings regarding aggravating factors, and reject Payne's challenges to those

---

[12] The present Second Circuit local rules, effective as of January 1, 2009, now explicitly cover the question of sanctions for defaults. Local Rule 31.2(d) states that "[t]he court may dismiss an appeal or take other appropriate action for failure to timely file a brief or to meet a deadline under this rule." Local Rule 38.1 states that "[t]he court may, after affording notice and an opportunity to be heard, impose sanctions on a party that: (a) fails to file a brief, the appendix, or any required form within the time specified by FRAP or a rule or order of this court, or (b) takes or fails to take any other action for the purpose of causing unnecessary delay."

21

findings, except as to the Committee's finding that "Payne's defective briefing and pattern of waiving claims he deems are not 'dispositive' of a petitioner's case demonstrates sloppy practice." Report at 7-8. Regarding this finding, it is not entirely clear to the Court from a review of the Report what defects are being referenced, and what waivers were incorrect, sufficient to give rise to a finding of a "pattern" demonstrating "sloppy practice."

The Committee's Report directs our attention to the March 11, 2010 referral order, which does discuss two cases in which prior panels of the Court had found that Payne had waived certain claims by not discussing them in his briefs. Referral Order at 3. While we agree with the Committee that one of those briefs, filed in *Shao Qin Zheng*, was defective for the reasons discussed by the panel that decided that case, *see* Section II(F) above, the Committee explicitly found "no misconduct in Payne's strategic decision not to pursue" a waived claim in the other case. Report at 6-7. Inasmuch as the Committee found a single example of a defective brief, we do not think clear and convincing evidence supports a finding that "Payne's defective briefing and pattern of waiving claims he deems are not 'dispositive' of a petitioner's case

demonstrates sloppy practice"[13]

### H.   Request for Private Reprimand

We deny Payne's request for a private, rather than public, reprimand.  While it is true that Payne has reduced his caseload and that his "failures occurred several years ago," Report at 7, suggesting that there is little likelihood of repetition, we conclude, consistent with our prior disciplinary decisions, that his misconduct was sufficiently egregious to warrant a public reprimand, *see, e.g.*, *In re Agola*, 484 F. App'x 594, 594-95 (2d Cir. 2012) (summary order) (public reprimand issued where attorney had failed to comply with this Court's scheduling orders and deadlines in twenty-one cases, causing the dismissal of seven cases, and had been criticized by three district court judges and a magistrate judge); *In re Spivak*, 469 F. App'x 16, 17-18 (2d Cir. 2012) (summary order) (public reprimand issued where attorney had failed to comply with this Court's scheduling orders in ten cases, causing their

---

[13] As noted by Payne, attorneys may, in the exercise of their professional judgment, waive claims on appeal when they reasonably determine that the claims are not worth pursuing and failure to raise them would therefore not prejudice their clients.  *See* D.R. 7-101(B)(1) ("In the representation of a client, a lawyer may . . . exercise professional judgment to waive or fail to assert a right or position of the client."); N.Y. Rule of Prof'l Conduct 1.2(e)("A lawyer may exercise professional judgment to waive or fail to assert a right or position of the client, or accede to reasonable requests of opposing counsel, when doing so does not prejudice the rights of the client.").

23

dismissal); *In re Mundie*, 453 F. App'x 9, 10-11 (2d Cir. 2011) (summary order) (public reprimand issued where attorney had filed a defective brief in one case, and failed to comply with this Court's scheduling orders in thirty-eight cases, causing their dismissal); *In re Einhorn*, 428 F. App'x 26, 26-27 (2d Cir. 2011) (summary order) (public reprimand issued where attorney had defaulted in multiple criminal appeals and caused four to be dismissed on default, although all four were later reinstated); *cf.* American Bar Association, Standards for Imposing Lawyer Sanctions § III(A)(1.2) (1986, amended 1992) (recommending that "[u]ltimate disposition of lawyer discipline . . . be public in cases of disbarment, suspension, and reprimand," and that "[o]nly in cases of minor misconduct, when there is little or no injury to a client, the public, the legal system, or the profession, and when there is little likelihood of repetition by the lawyer, should private discipline be imposed").

**III. Disposition**

Upon due consideration of the Committee's report, the underlying record, and Payne's submissions, it is hereby ORDERED that Payne is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report, except as discussed above, and DIRECTED to comply with the CLE requirement described on page eight of the Committee's report. Payne must file, within

24

one year of entry of this decision, an affidavit with this Court and the Committee's secretary demonstrating his compliance with the CLE requirement.

Payne must disclose this decision, and its appendices, to all courts and bars of which he is currently a member, and as required by any bar or court rule or order. Payne also must, within fourteen days of the filing of this order, file an affidavit with this Court confirming that he has complied with the preceding disclosure requirement. Furthermore, the Clerk of Court is directed to release this decision, and its appendices, to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other published decisions of this Court, and to serve a copy on Payne, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[14]

---

[14] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities. While we request that all such documents remain confidential to the extent circumstances allow, we of course leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

25

## APPENDIX 1

### Text of March 11, 2010 Order

For the reasons that follow, Douglas Payne is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46.2. We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Payne was referred to the Grievance Panel based on his conduct in *Jin Xia Lin v. Ashcroft*, 04-6180-ag, which was dismissed in January 2006 after Payne failed to file a brief for the petitioner by the October 2005 due date. *See Jin Xia Lin*, 04-6180-ag, order filed 1/6/06. Nearly three years later, in November 2008, Payne filed a motion for reinstatement of the case, stating that his earlier opinion that the case "was not particularly meritorious" had changed. *Id.*, motion filed 11/10/08. Payne also alleged that he had sought an extension of time to file his brief in 2005. *Id.* However, this Court has no record of any such request, and Payne did not submit a copy of that earlier request, explain why he had failed to contact the Court in the prior three years to ascertain the status of the request, or claim that he did not receive the January 2006 dismissal order. Payne's motion for reinstatement was denied. *Id.*, order filed 12/22/08.

Further review reveals that, of the 109 additional cases for which Payne is listed as an attorney of record, he has defaulted on this Court's scheduling orders 14 times. *See* cases docketed under 03-4323-ag, 03-40020-ag, 04-1021-ag, 04-2070-ag, 04-2413-ag, 04-3040-ag, 04-3968-ag, 04-3994-ag, 04-4218-ag, 04-4871-ag, 04-5375-ag, 04-6039-ag & 05-2686-ag (consolidated), 05-5094-ag, 05-5224-ag. Although Payne requested and was granted extensions of time in most of the defaulted cases, he allowed the final briefing deadlines to pass without requesting additional extensions of time, a stay of proceedings, or leave to voluntarily dismiss the petitions for review. All 14 cases were dismissed, although Payne filed successful motions to reinstate in two of them. In *Jun Jian Zheng v. Gonzales*, the case was dismissed in May 2006 but reinstated in February 2007. *See* 03-40020-ag, order filed 2/14/07. In his reinstatement motion, Payne attributed his delay in moving to reinstate to the fact that he "[had] been occupied with many other matters so that [he had] not been in

26

the position to promptly prepare [the] petitioner's brief." *Id.* at 1/5/07 entry. In the other case, *Xiao Yun Lin v. Gonzales*, Payne moved to reinstate the case after it was dismissed in February 2006, on the grounds that it should be consolidated with a pending case that had been filed by the petitioner's husband. *See* 05-2686-ag at 4/12/06 entry; *see also Chen Quin Liu v. Ashcroft*, 04-6039-ag, order filed 7/11/06 (consolidating cases). This Court granted the motion; however, Payne failed to explain why he had not moved to consolidate the two cases before allowing the briefing deadline in 05-2686 to pass. Furthermore, although the husband's case, docketed under 04-6039, was never dismissed for failure to comply with this Court's scheduling orders, Payne filed his brief in that matter one week after the deadline had passed. *See* 04-6039-ag at 4/12/06 entry. Similarly, in another case, the Government moved to dismiss Payne's case after he failed to submit a timely brief. *See Jian He Zhang v. Holder*, 04-2157-ag at 8/30/05 entry. In that instance, Payne promptly filed his brief following the Government's motion to dismiss, which this Court accepted. *Id.* at 9/1/05. The case was later remanded to the BIA on the consent of both parties. *Id.*, order withdrawing appeal filed 12/19/05.

Additionally, in nine cases, Payne filed stipulations under Fed. R. App. P. 42(b) to withdraw the cases with prejudice only after the briefing deadlines had passed, and after having received multiple extensions of time. *See* cases docketed under 03-4018-ag (stipulation filed one month after deadline), 03-41134-ag (stipulation filed two weeks after deadline), 04-1559-ag (stipulation filed one week after deadline), 04-2838-ag (stipulation filed three weeks after deadline), 04-2695-ag (stipulation filed five days after deadline), 04-3501-ag (stipulation filed two weeks after deadline), 04-4092-ag (stipulation filed two months after deadline), 04-5933-ag (stipulation filed one week after deadline), 04-6123-ag (stipulation filed two weeks after deadline). In five other cases, Payne filed identical withdrawal stipulations on the day that his briefs were due. *See* cases docketed under 02-4888-ag, 03-40631-ag, 03-40633-ag, 03-41093-ag, 05-1023-ag. Moreover, in *Yu Chun Chen v. Ashcroft*, 02-4931-ag, this Court issued, in March 2006, an order to show cause why the case should not be dismissed based on Payne's failure to prosecute the case, which had been filed in this Court in December 2002. *See* 02-4931-ag, order filed 3/29/06. In response, Payne attributed his oversight to the fact that he had never received a scheduling order from this Court after the case was transferred here by the district court. *Id.*, response filed 4/19/06. Although Payne appeared

27

to suggest that the lack of a scheduling order resulted from the failure of the district court to transfer the case file to this Court, he did not explain his own failure to ascertain the status of the case during the three years in which it was pending. *Id.* After a briefing schedule was issued, Payne ultimately withdrew the appeal with prejudice the day after the petitioner's brief was due. *Id.*, entry at 10/3/06.

Finally, a review of this Court's orders reveals that, in two cases, Payne failed to sufficiently argue certain dispositive claims, such that they were unreviewable by this Court. *See Han Ying Zhu v. Gonzales*, 05-5761-ag, order filed 8/10/06 (finding challenge to pretermission of asylum application jurisdictionally barred and that petitioner "ha[d] not meaningfully challenged the [immigration judge's] denial of her claim for CAT relief in her brief to this Court"); *Shao Qin Zheng v. Mukasey*, 08-1965-ag, order filed 3/23/09 (finding immigration judge's adverse credibility finding dispositive of petitioner's asylum and CAT claims but deeming any challenge to that finding waived because it was not challenged in the opening brief).

Upon due consideration of the matters described above, it is hereby ORDERED that Douglas Payne is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46.2, and the Rules of the Committee on Admissions and Grievances.

[text redacted]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: Michael Zachary
Supervisory Staff Attorney
Counsel to the Grievance Panel

<u>Report of the Committee</u>
<u>on Admissions and Grievances</u>

## I.    Introduction

By Order dated March 11, 2010, the United States Court of Appeals for the Second Circuit ("the Court") referred Douglas B. Payne to this Committee for investigation of his conduct before the Court and for preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Order of the Grievance Panel: Request for State and District Court Disciplinary Information, 10-90019-am ("Order").

The Order raised a number of areas of concern regarding Payne's conduct. First, Payne was referred to this Committee to investigate his conduct surrounding his motion to reinstate *Jin Xia Lin v. Ashcroft*, 04-6180-ag. Second, the Order noted that Payne defaulted on a number of scheduling orders during the period of 2004 to 2006. Third, the Order noted that in nine cases, during the period of 2004 to 2006, Payne filed stipulations to withdraw only after briefing deadlines had passed and after having received multiple extensions of time. Fourth, the Order noted that Payne has filed deficient briefs in the Court. The Court observed that Payne's briefs failed to sufficiently argue certain dispositive claims such that they were unreviewable by the Court.

The Committee recommends that Payne be publicly reprimanded for his conduct, and that he be required to complete pre-approved CLE courses in appellate immigration practice. The following constitutes the Committee's report and recommendation.

## II.    This Disciplinary Proceeding

On April 7, 2010, this Committee issued a Notice of Referral and Proceeding to Payne. The Notice ordered, *inter alia*, Payne to show cause why the Committee should not recommend disciplinary and/or other corrective action in connection with the matters set forth in the Order.

1

On June 29, 2010, Payne filed a Response with the Court in response to the Order. On August 11, 2010, a hearing was held, conducted by Committee members Mary Jo White and Terrence M. Connors (the "Hearing"). Payne appeared *pro se* and did not have any other witnesses.

## III. Factual Background

The following facts are taken from court records and from Payne's written submissions and testimony and exhibits at the Hearing.[1]

Douglas Payne graduated from University of Michigan Law School in 1975 and got his B.A. from Princeton University in 1969. (Tr. at 26.) He is admitted in the Second Circuit and in seven other circuits and in the Southern District of New York and Eastern District of New York. At the time of his response, he had six immigration cases pending before the Second Circuit. (Response at 1.)

He has been a solo practitioner for 24 years. (Tr. at 26.) His practice has focused on immigration law. (Tr. at 26.) Payne's law office also includes a secretary and has, in the past, included part-time "assistants." (Tr. at 18.) Since the time of his defaults on scheduling orders, Payne has reduced his caseload, which now consists of approximately thirty cases total. (Tr. at 36.) Although Payne has never been disciplined for professional misconduct, during a time when he was on "inactive" status on the State Bar of Michigan, he was suspended for nine days for non-payment of dues. Upon learning of the suspension, Payne resigned from the State Bar of Michigan on March 11, 2004. (Response at 1; Tr. at 28-29.)

## IV. The Committee's Role and Standard of Review

Under the Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit ("Committee Rules"):

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office . . . . An attorney also may be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Committee Rule 4; *see also* Fed. R. App. P. 46(c) ("[A] court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule.").

---

[1]     Citations to the Hearing are designated "Tr. __."

"Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *In re: Snyder*, 472 U.S. 634, 645 (1985).

The Committee's "finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Committee Rule 7(h). If this burden is met, the Committee will then generally consider (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors, in order to determine the sanction, if any, to recommend to the Court. *See* American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") § 3.0. The Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Committee Rule 6.

## V.     The Legal Standard for Identifying Misconduct

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004); *In re Dilmaghani*, 78 A.D.3d 39, 49 (N.Y. App. Div. 2010); *Matter of Rabinowitz*, 189 A.D.2d 402, 408 (N.Y. App. Div. 1993); *United States v. Song*, 902 F.2d 609 (7th Cir. 1990); *Matter of Kraft*, 148 A.D.2d 149 (N.Y. App. Div. 1989); *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973).

Such conduct is also sanctionable under the applicable professional rules and standards. Because Payne's conduct at issue in this matter occurred prior to the adoption of the New York Rules of Professional Conduct in 2009, it is governed by the New York Lawyer's Code of Professional Responsibility (the "Code"). References to the applicable provisions of the Code will be to the Disciplinary Rules ("D.R.") and Ethical Considerations ("E.C."). Citations to the current New York Rules of Professional Conduct ("Rules") are for reference only to demonstrate the continuity of an attorney's responsibilities and ethical obligations under both the old and current frameworks. Additionally, the ABA Standards call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. While not binding, the ABA Standards provide additional guidance in this matter.

With respect to Payne's conduct that is the subject of this Report and Recommendation, the applicable provisions of the Code make clear that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer." D.R. 6-101(a)(3). Additionally, a lawyer has a duty to represent his or her client "zealously," D.R. 7-101, E.C. 7-1, and should "be punctual in fulfilling all professional commitments," E.C. 7-38. The Code also prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice or adversely reflects on the lawyer's

3

fitness as a lawyer. *See* D.R. 1-102(A)(5), (7); *see also* Rules 8.4(d), (h). This Court has also made clear in the context of intentional defaults on scheduling orders, that "an appellant's counsel of record who determines that the appeal will not proceed for any reason is required to inform the Court of the situation and seek to either withdraw the appeal or withdraw as counsel. Counsel of record may not end the representation of a client without taking affirmative action, or end an appeal by allowing its dismissal for lack of prosecution." *In re Yan*, 390 F. App'x. 18, 21 (2d Cir. 2010).

## VI.    The Alleged Misconduct

### A.    *Jin Xia Lin v. Ashcroft*, 04-6180-ag

Payne was referred to this Committee following the Court's review of his motion to reinstate *Jin Xia Lin v. Ashcroft*, 04-6180-ag. *Jin Xia Lin* was dismissed on default in January 2006. Nearly three years later, on November 10, 2008, Payne filed a motion for reinstatement of the case, stating that his earlier opinion that the case "was not particularly meritorious" had changed. (Hearing, Ex. 3.) In his 2008 motion, Payne explained that he sought an extension of time to file his brief in 2005, but later "overlooked the fact that I had not received an extension of time to file Petitioner's Brief and the Joint Appendix until after the Mandate had issued." (*Id.*) The Court had no record of any extension request by Payne, Payne did not submit a copy of that earlier request, Payne did not explain why he failed to contact the Court in the intervening three years to learn the status of the request, and Payne did not claim that he had not received the January 2006 dismissal order. (Order at 2.) The motion for reinstatement was denied.

In his written Response to the Committee, Payne admitted that the charges regarding *Jin Xia Lin* were "generally accurate." (Response at 3.) He maintained that he requested an extension of thirty days beyond October 26, 2005 to file petitioner's brief and attached a copy of his request, which he had subsequently found on his computer (Response, Ex. D; Tr. 12), but noted that the Court had no record of it. (Response, Ex. D.) To explain why he did not contact the Court during the previous three years, Payne claimed that the petition had no merit and he believed it "should have been withdrawn." He explained that the petitioner moved away "towards the end of 2005," and Payne lost communication with her and was unable to discuss the need for a stipulation of dismissal. (Response at 4.) According to Payne, the petitioner "eventually" came to his office to discuss the case and explained certain facts about her immigration court hearing that caused Payne to then think that her claim deserved review, and so he sought reinstatement. (Response at 4.) At the hearing before this Committee, Payne testified that he did not initially pursue the petition because he thought the case was weak and should be withdrawn, and then he had difficulty communicating with his client and the case was dropped. (Tr. at 13-14.) Payne did not recall if or when he or a staff member informed the petitioner that her case had been dismissed. (Tr. at 16.) Payne stated that he did not believe a default would result in any consequences to an attorney because it was a matter between the attorney and the client. (Tr. at 14.)

Payne's November 2008 motion did not state that his initial default was intentional. Instead, his motion states that he was waiting for an extension and "overlooked" the fact he did not get one until the appeal was dismissed. (Hearing, Ex. 3, at 2.) The Committee finds Payne's

4

various explanations for failing to contact the Court prior to his motion to reinstate to be lacking in credibility. Accordingly, the Committee finds that clear and convincing evidence demonstrates that Payne's conduct in failing to comply with the Court's scheduling order and his belated motion to reinstate was prejudicial to the administration of justice and "adversely reflects on [his] fitness as a lawyer." DR 1-102(A)(5), (7); *see also* Rules 8.4(d), (h).

## B.    Defaults and Late Briefs

Of the 109 additional cases for which Payne was listed as an attorney of record as of the time of the Order, Payne defaulted on scheduling orders 14 times.[2] (Order at 2.) The majority of these defaults took place several years ago - - between 2005 and 2007. In most of the cases, Payne requested and was granted extensions of time only to default later. In two cases, Payne filed successful motions to reinstate the appeals (*Jun Jian Zheng v. Gonzales*, 03-40020-ag; *Xiao Yun Lin v. Gonzales*, 05-2686-ag), and in one case he was able to obtain partial relief for petitioner at the BIA. (*See* Response at 6 & Ex. H.).

Payne testified that in the majority of these cases, he intentionally defaulted on the scheduling orders. (Response at 2-3; Tr. 14-25.) Payne claimed that the petitioners in most of these cases did not initially agree that he would write briefs on their behalf. Instead, the petitioners chose to wait until the outcome of the Civil Appeal Management Plan ("CAMP") pre-argument conferences before deciding if they would authorize Payne to write briefs. Payne stated that if the petitioners decided not to have him write a brief, disappeared, or did not communicate with him about proceeding with the briefing, he did not write the briefs and instead allowed the appeals to be dismissed on default. (Response at 2-3.)[3]

Payne also claims he did not receive notification from the Second Circuit that he "was in default in filing any petitioner's brief and should execute a stipulation with the U.S. Attorney's Office to withdraw a petition for review." (Response at 3.) Payne stated that he did not realize he had a duty to file a stipulation of dismissal or withdraw until the Court raised the issue with a colleague in 2004. (*See* Response at 3 & Exs A-C; Tr. at 15.) Payne's defaults, however, continued after 2004.

In several of the cases, Payne denied that he defaulted on a briefing schedule. For example, in two cases, Payne stated that he did not default because the petitioner did not want him to proceed with the case. (Response at 5.) In another example, in *Zhou v. Ashcroft*, 04-3994-ag, Payne denied the allegation that he defaulted on the scheduling order, explaining that the petitioner's brief was due on September 2, 2005 and the petitioner discharged Payne on August 17, 2005 before the brief was due. (Response at 5 & Ex. F.) On September 1, 2005, however, Payne filed a motion for an extension on behalf of the petitioner even though Payne had been discharged. In support of that motion, Payne declared that he represented the petitioner and asked for an extra thirty days. (*See* Hearing, Ex. 4.) Payne testified that he filed the motion for an extension after his client dismissed him in order to afford the petitioner a chance to hire

---

[2]      In a fifteenth case of untimeliness, Payne did not file his brief until the Government moved to dismiss the case. *See Jian He Zhang v, Holder*, 04-2157-ag. The Court accepted the brief for filing. Payne also admits this charge. (Response at 6.)

[3]      The Committee notes that, even if this explanation were factually accurate--an issue we do not reach--such a practice, which fails to promptly inform the Court of a decision not to proceed, would be unacceptable.

new counsel. (Tr. at 20.) After filing the motion for an extension, Payne had no further interactions with the petitioner. (Tr. at 20.)

In addition, in nine cases, Payne filed stipulations under Fed. R. App. P. 42(b) to withdraw the cases with prejudice only after the briefing deadlines had passed and after having received multiple extensions of time. Payne generally admitted these allegations, but in several cases claimed the allegations were "inaccurate" because his stipulation was signed before the briefing deadline passed. (Response at 7; Tr. at 34.)

Payne admitted that failing to meet deadlines or file briefs on time "could be" neglect or an "oversight" of a client's interests. (Tr. at 39.) He did not think his clients were prejudiced, even in the cases where he acknowledged that there was neglect. (Tr. at 40.) Payne explained that he would not know if the clients were prejudiced unless there was a positive result for them elsewhere, but that he did not believe there had been any positive results for the petitioners whose cases had defaulted. (Tr. at 40.) This is not an adequate defense to a charge of violating D.R. 7-101(A)(3) ("A lawyer shall not intentionally . . . prejudice or damage his client during the course of the professional relationship . . . .") Payne's defaulting precluded any opportunity for the Court to determine whether his clients were entitled to such positive results in their appeals. In depriving his clients of the opportunity to have their claims presented to and decided by the Court, we find, in these circumstances, a violation of D.R. 7-101(A)(3).

The Committee finds that clear and convincing evidence demonstrates that these failures were prejudicial to the administration of justice and "adversely reflect[] on [his] fitness as a lawyer." D.R. 1-102(A)(5), (7); *see also* Rules 8.4(d) (h). *See also* Rules 1.1(c)(1), (2); 1.3(c). The Committee also finds that the conduct occurred several years ago and notes that Payne has not had any defaults since the hearing in this matter.

## VII.   Defective Briefing

In *Han Ying Zhu v. Gonzales*, 05-5761-ag, the Court found that the challenge to pretermission of asylum application was jurisdictionally barred and that the petitioner "ha[d] not meaningfully challenged the [immigration judge's] denial of her claim for CAT [Convention Against Torture] relief in her brief to this Court." No. 05-5761-ag, 192 Fed.Appx. 75 (2d Cir. Aug. 10, 2006). Payne admitted that he did not meaningfully challenge the denial of the petitioner's Convention Against Torture ("CAT") claim. He argued in his response that the waiver of the CAT claim was justified, however, because "there is absolutely no question that the petitioner's claim for protection under [CAT] was not dispositive of this case." (Response at 10.)[4] Payne testified that he generally waives CAT claims because the burden of proof on such

---

[4]    Besides numerous waivers of CAT claims, a review of the Court's opinions and orders demonstrates that Payne has waived other claims in other matters. *See, e.g., Meng Luan Zhao v. Gonzales*, 211 Fed.Appx. 52, 54, 2007 WL 57570, at *2 (2d Cir. 2007) (holding that question of whether the BIA exceeded the scope of its authority under 8 C.F.R. § 1003. 1(d)(3)(i), (iv), in identifying additional factual bases for this conclusion waived and CAT claim waived); *Yong Qiang Li v. Gonzales*, 207 Fed.Appx. 66, 67, 2006 WL 3496887, at *1 (2d Cir. 2006) (holding that political opinion claim and CAT claim were waived in petitioner's brief); *Bin Jiang v. Gonzales*, 196 Fed.Appx. 24, 25, 2006 WL 2472844, at *1 (2d Cir. 2006) (holding that withholding of removal and CAT claims waived in BIA and in Circuit); *Lin v. Gonzales*, 159 Fed.Appx. 224, 225, 2005 WL 3106360, at *1 (2d Cir. 2005) (holding that "[i]n his motion to reconsider, Lin claimed that he was persecuted on account of his religion and political views. Lin waived these claims in his petition for review"). Again, the conduct at issue occurred several years ago.

claims is so high that he does not believe they are worth the Court's time. (Tr. at 25.) Under the circumstances of this case, the Committee finds no misconduct in Payne's strategic decision not to pursue the petitioner's CAT claim.

In *Shao Qin Zheng v. Mukasey*, the Court found the immigration judge's adverse credibility finding dispositive of the petitioner's asylum and CAT claims but deemed any challenge to that finding waived because it was not challenged in the opening brief. *See* No. 08-1965-ag, 322 Fed.Appx. 6, at *7 (2d Cir. 2009). Payne responded that it "is an absolute misrepresentation" and that the "Hearing Panel did not read" his brief. (Response at 12.) Payne explained that instead of challenging the adverse credibility finding as it related to past persecution, he challenged it as it related to the fear of future persecution because the "Court had held that reopening could be granted even if the IJ had made a negative credibility determination, if the factual basis for the second claim rested on facts different from the first asylum claim." (Response at 12, citing *Paul v. Gonzales*, 444 F.3d 148, 154 (2d Cir. 2006.) Payne's brief did not cite *Paul v. Gonzales*, case involving a motion to reopen. Payne testified that while he "could have stated it in a more direct and clear fashion," his argument about the fear of future persecution was based on an argument that the petitioner's fear of returning to China was supported by background materials and thus that the adverse credibility finding was false. (Tr. at 23.) Payne admitted that the case was not on a motion to reopen. (Tr. at 23.) Payne testified that based on his review of the record, he had no grounds to challenge the adverse credibility finding as to the claim of past persecution. (Tr. at 23.) In his brief, Payne did not explain that he was waiving the adverse credibility finding as to past persecution but was challenging it as to fear of future persecution. Because the brief did not contain "appellant's contentions and the reasons for them, with citations to the authorities," as required by Fed. R. App. P. 28, the Committee finds that clear and convincing evidence demonstrates that Payne's poor briefing in this case violated Fed. R. App. P. 28.

## VIII. Aggravating and Mitigating Factors

Payne presented several mitigating factors. Payne testified that he was ill in the early part of 2006 and that while he could not "specifically state" that his physical condition affected his default in the Jin Xia Lin case, "it may well have."[5] (Tr. at 9-10.) Payne has attempted to remedy his case management problems by taking on fewer cases, and he no longer accepts engagements for representation of cases without ensuring that the representation includes the client's agreement that Payne prepare and file a brief. (Tr. at 36; Response at 13.) In addition, after defaulting, Payne successfully obtained positive results in at least three cases, and has no record of prior discipline, ABA Standards § 9.32(a). Significantly, Payne's failures occurred several years ago, and he has had no defaults since the hearing in this matter. In 2011, as of the date of this Report and Recommendation, Payne had 17 cases in the Court. He had no defaults or other issues in any of these cases and had not been criticized by the Court.

There are some aggravating factors as well. While Payne's failures to comply with scheduling orders occurred several years ago, approximately between 2004 and 2007, they stretched over a period of years. *See* ABA Standards § 9.22(c), (d). He is an experienced practitioner who should have recognized and addressed his problems sooner than he did. *See* ABA Standards § 9.22(i). Moreover, the Committee reviewed the briefs cited in the Order and

---

[5] An illness in 2006 could not, of course, mitigate conduct in 2004, 2005, and 2007.

finds them to be generally of poor quality. Payne's defective briefing and pattern of waiving claims he deems are not "dispositive" of a petitioner's case demonstrates sloppy practice.

While Payne claimed that the defaults did not harm petitioners because the cases were "basically weak," (Response at 13), it is not possible to say how the Court would have acted had the claims been presented. Payne's conduct deprived his clients of the opportunity to have their claims heard, which thus prejudiced them. Persistent failure to comply with scheduling orders, or to properly withdraw, also shows a disregard for Payne's responsibilities to the Court. *See Bennett v. Mukasey*, 525 F.3d 222, 225 (2d Cir. 2008); D.R. 2-110(A)(2) ("[A] lawyer shall not withdraw from employment until the lawyer has taken steps to the extent reasonably practicable to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."); *see also* Rule 1.16(e). Payne demonstrated a general lack of remorse about violating the Court's scheduling orders and the alleged defective briefing, *see* ABA Standards § 9.32(g), although it appears that this misconduct ended prior to the Court's Referral Order and has not been repeated.

Finally, in one case where Payne denied wrongdoing, Payne admitted that he filed a motion for an extension on behalf of a petitioner who had already dismissed him, in violation of the disciplinary rules, *see* D.R. 2-110(B)(4) ("A lawyer representing a client before a tribunal, . . . shall withdraw from employment . . . if the lawyer is discharged by his or her client"); *see also* Rule 1.16(b)(3), although Payne explained that he did so to try to afford his former client time to obtain new counsel.

## IX. Recommendation

The Committee is troubled by Payne's conduct. The Committee finds, by clear and convincing evidence, violations of Fed. R. App. P. 28, 46(c); D.R. 1-102(A)(5), (7), 7-101(A)(3). The Committee recognizes that the defaults and other misconduct that are the subject of the Committee's review are relatively dated, occurring largely in the period from 2004 to 2007, and that under ABA Standards § 9.32(j), passage of time can be a mitigating factor. Nevertheless, the Committee finds that Payne's conduct warrants a strong public reprimand.

In fact, were it not for the passage of time and Payne's evident self-correction of at least certain of his practices that have led to the Committee's finding of several disciplinary violations, the conduct and Payne's response to it could have warranted a more severe sanction, including a possible period of suspension. Under all of the circumstances, the Committee recommends that Payne be publicly reprimanded. In addition, he should be required to complete no fewer than six hours of pre-approved CLE in appellate immigration law, from a CLE provider accredited by the bar of New York, in addition to the required hours of CLE.

8

Response of Douglas Payne to
Report of the Committee on Admissions and Grievances

## I. The Alleged Misconduct

### A. *Jin Xia Lin v. Ashcroft,* 04-6180-ag

The Committee's finding that my "various explanations for failing to contact the Court prior to his motion to reinstate to be lacking in credibility" is flawed. I certainly failed to file petitioner's brief on time because of inadvertence. However, at the Civil Appeals Management Program ("CAMP") conference this Court's staff attorney had indicated to me that this case was very weak and should be withdrawn. In the weeks prior to the deadline for petitioner's brief, my staff had sought to communicate with the petitioner so that I could discuss this case with her. However, the Petitioner had moved away from the address we had for her (indeed, out of state to Massachusetts) and had not notified us of her new address or telephone number. Only years later did the petitioner come to my office to discuss this case. I admit that I should have taken some affirmative action to prevent the dismissal of this case and to reinstate it soon after it had been dismissed. Nevertheless, I would characterize the merits of this case as the weakest of any Petition for Review that I have ever filed.

## B. Defaults and Late Briefs

With respect to *Zhou v. Ashcroft*, 04-3994-ag, although the petitioner discharged me as his counsel on August 17, 2005, as time passed and it was clear that no other attorney had appeared for him, I telephoned the petitioner and asked him if he wanted me to seek an extension of time to file petitioner's brief. The petitioner agreed to this, and specifically authorized me to file a motion to extend the time to file petitioner's brief, which I did on September 1, 2005 thus complying with the New York Lawyer's Code of Professional Responsibility (the "Code") Disciplinary Rule ("DR") D.R. 2-110(B)(4), as the client petitioner specifically did not discharge me until after I filed a motion to extend the time to file petitioner's brief.

The allegation that I "filed stipulations under Fed. R. App. 42(b) to withdraw the cases with prejudice only after the briefing deadlines had passed" is generally inaccurate because the Office of the United States Attorney for the Southern District of New York ("USASDNY") filed these stipulations. That is why it was important that I signed the majority of these stipulations at or prior to the deadlines, as the USASDNY would notify the Clerk's office at or prior to the deadline that the case had been resolved. In only three of these cases did I consent to withdrawal after the deadline had passed.

The charge that I violated D.R. 7-101(A)(3) by intentionally damaging or prejudicing my client during the course of the professional relationship is meritless, and, indeed, is not supported by any reference to the record. As I explained in my Response to the Notice of Referral, all these defaults were either because the clients wanted me not to file a Brief or because of inadvertence. I never chose not to file a Brief that the client wanted to be filed. I never intentionally damaged or prejudiced a client, and the record has absolutely no evidence of any such misconduct.

As the Committee finds, the aforesaid conduct occurred years ago. I have not had such a default for more than five years now. I regret the harm I caused to the administration of justice, and apologize to this Court for my failure to uphold the standards that I should have maintained without lapse.

2

## C. Defective Briefing

The Committee found that in *Han Ying Zhu v. Gonzales*, 05-5761-ag, there was "no misconduct in Payne's strategic decision not to pursue the petitioner's CAT [United Nations Convention Against Torture] claim." I do not disagree with this finding.

As to *Shao Qin Zheng v. Mukasey*, the Committee found that "[i]n his brief, Payne did not explain that he was waiving the adverse credibility finding as to past persecution but was challenging it as to fear of future persecution." Therefore, the Committee found that my "poor briefing" in this case violated Federal Rule of Appellate Procedure 28 by not setting forth the petitioner's "contentions and the reasons for them, with citations to the authorities." This finding is meritless. First, I believed that I could not argue against the adverse credibility finding by the Immigration Judge ("IJ") because during cross examination, the petitioner admitted that the story about past persecution that she told to the Immigration Inspector at the airport where she entered the United States had been a complete fabrication, suggested to her by the smuggler who brought her to the United States. At this point I must revise my response to diverge from my Response to the Referral, based upon my further reading and reflection upon the IJ's decision and the decision of the Board of Immigration Appeals ("BIA") that was brought to this Court by the Petition for Review. Contrary to the Committee's understanding, the IJ in her decision limited her adverse credibility finding to petitioner's claims for past persecution based upon family planning. The IJ made no adverse credibility finding as to petitioner's fears of future persecution, including her CAT claim. Therefore, my argument for those claims did set forth petitioner's contentions and the reasons for them. It is true that I failed to cite the case that I raised to the Committee, *Paul v. Gonzales*, 444 F.3d 148, 154 (2d Cir. 2006). That is because, I now believe, that I did not then believe that the IJ had made an adverse credibility finding as to petitioner's claims for future persecution. Following the Committee's own line of reasoning, i.e., that because I did not explicitly mention that I was contesting the IJ's adverse credibility finding as to future claims of persecution, I was not contesting it, the IJ's decision did not extend the adverse credibility finding to future claims of persecution, but by its own language limited the adverse credibility finding to the issue of petitioner's

testimony as to past persecution, and refrained from extending the adverse credibility finding to claims of future persecution .

Instead, the IJ based her rejection of the petitioner's claims of future persecution upon lack of proof. First, the IJ found that petitioner's claim for protection against being fined, detained, or put in a labor camp for three years because of her illegal departure from China was seeking protection against "prosecution" not persecution. Next, the IJ did not find that petitioner had clearly left China illegally. As to petitioner's CAT claims, the IJ found no evidence that petitioner had left China illegally, and again, even if she had, any punishment would be for prosecution of a crime, not persecution.

In its decision, although the BIA found that the IJ's adverse credibility finding was "not clearly erroneous", it addressed petitioner's claims relating to her illegal departure from China by assuming petitioner was credible. Hence, I did not argue against the adverse credibility finding, because the BIA's decision essentially did not adopt such finding, but proceeded on the merits of the claims. Thus, any punishment for an illegal departure the BIA stated, would be punishment for a law of general applicability. Regarding petitioner's claim of fearing harm by the smugglers, the BIA dismissed it as being a personal retribution claim, not a claim for persecution. As to petitioner's CAT claim, the BIA found that the IJ had rejected it for the lack of any particularized evidence.

I believe it is clear why I was surprised at the hearing panel's criticism that I had waived the dispositive claims by waiving challenge to the IJ's adverse credibility claim. First, the IJ's adverse credibility claim was limited to the family planning past persecution claim; it did not extend to petitioner's claims of fearing future persecution for her illegal departure from China or for her CAT claim.

More importantly, the Petition for Review is taken from the BIA decision, and the BIA decision generally assumed petitioner's credibility as to her claims of future persecution. Therefore, the Committee's claim that I did not set forth petitioner's contentions and reasons therefor is not correct.

4

## II. Aggravating and Mitigating Factors

I agree with the Committee's listing of those mitigating factors that they have discussed. I am adding another mitigating factor as an addendum hereto. This is an Internet review of attorneys that I have inadvertently stumbled upon. It is obviously a positive review of me as an attorney. I have no connection with the organizers of this website or anyone else connected with this website, and have had no communication at all regarding this review with the client who unbeknownst to me has apparently written a review of me. For what it is worth, I supplement my response with an addendum of a copy of this review. Pursuant to the American Bar Association's Standards for Imposing Lawyer Sanctions as approved, February 1986, and as amended, February 1992, ("ABA Standards"), §9.32(g), character or reputation is a mitigating factor. As discussed by the Committee, my lack of a prior disciplinary record is another mitigating factor, ABA Standards § 9.32 (a). I believe a further mitigating factor is clear from the record, the absence of a dishonest or selfish motive, ABA Standards § 9.32 (b). I have cooperated with the Committee to the best of my understanding, and therefore ABA Standards § 9.32 § 32 (e) is another mitigating factor. The Committee itself recognizes that the delay in disciplinary proceedings, ABA Standards §9.32 (j), is also a mitigating factor. I have showed my remorse by reforming my practice to avoid repetition of the problems I had, and ABA Standards §9.32 (l) lists this as a mitigating factor. I have not repeated my mistakes since 2007, and the remoteness of my offenses should be considered a mitigating factor, ABA Standards §9.32 (m). I would also urge that the large number of cases that I handled, as well as the failure of my clients to keep in reasonable communication with me, and, indeed, their frequent moves without notifying me of changes in residence address or telephone numbers made it very difficult to promptly advise the Court of cases where the petitioner's brief would be delayed or a case withdrawn. This was most definitely the case in *Jin Xia Lin v. Ashcroft,* 04-6180-ag, where the petitioner disappeared in 2005 or 2006, and left no forwarding address or telephone number. She did not appear again until about August 2008, when she revealed that she had been living in Massachusetts, at an address which she had never notified me or anyone in my office of, and had a telephone number that she had similarly failed to notify me or anyone in my

5

office of. As I have previously noted, when the deadline for her brief approached, I had no way of communicating with her, and at the CAMP Conference this court's staff attorney expressed the view that her petition for review should definitely be withdrawn. As I had no way of communicating with her at the time that her brief was due, I could not withdraw her brief. From my review of the record, I was reluctant to file a brief in support of a position that seemed to be unwarranted under existing law. *See*, D.R. 7-102(A)(2). Only after the petitioner resurfaced and stressed how she believed her previous attorney had been ineffective by withdrawing her claim for asylum before the IJ without advising her beforehand and obtaining her consent, did I come to believe that this claim should be set before this Court. With hindsight I should not have made a motion to reinstate her petition for review in my own interest, but I was so concerned that this petitioner had received such ineffective assistance and had to explain her asylum claim to the IJ without the active preparation and assistance of any attorney that I decided to chance the consequences for me to see if this Court would take mercy upon her. The failure of this client and other of my clients to keep in communication with me should also be considered a mitigating factor.

Finally, since March 2006, as a solo practitioner, I have been an active member of the American Immigration Lawyers Association by participating in their continuing legal educational programs.

The Committee notes that my failures to comply with scheduling orders "stretched over a period of years", thus constituting aggravating factors pursuant to ABA Standards § 9.22(c) and (d). I accept this evaluation. The Committee's further criticized me for being an experienced practitioner "who should have recognized and addressed his problems sooner than he did. *See* ABA Standards § 9.22 (i)." This is correct. It is curious, however, why this Court's Local Rule, now at §31.2(d), on defaults in filing briefs, makes no mention of disciplinary consequences for failure to submit a brief on time. It is still more questionable why the Committee in addressing my conduct states at page 4 of its Report and Recommendations: "This Court has also made clear in the context of intentional defaults on scheduling orders, that 'an appellant's counsel of record who determines that the appeal will not proceed for any reason is required to inform the Court of the situation and seek to either withdraw the

6

appeal or withdraw as counsel. Counsel of record may not end the representation of a client without taking affirmative action, or end an appeal by allowing its dismissal for lack of prosecution.'" *In re Yan*, 390 F. App'x 18, 21 (2d Cir. 2010). Clearly, the Court's position on intentional defaults *was made clear approximately four years after my last such default.* How can the Committee charge me with a violation of this Court's position that was not made clear until four years after my conduct? The fact that this Court did not make clear its position on the kind of conduct that I am charged with until four years after my conduct should be viewed as a mitigating, not an aggravating factor. Nevertheless, I sincerely apologize for my conduct that did interfere with this Court's orderly administration of its business.

The Committee states that it has reviewed the briefs cited in the Order and that it found them to be generally of "poor quality." This boilerplate, conclusory language is not supported by any reference to the record, and it cannot be supported by anything in the record. Indeed, the Committee's own Report & Recommendation at page 7 contradicts this conclusion by specifically finding as to *Han Ying Zhu v. Gonzales,* that there was no misconduct in my waiver of the CAT claim, which was what the hearing panel had criticized. As to the other brief criticized, *Shao Qin Zheng v. Mukasey,* I believe my discussion of the criticism and the decisions sought to be reviewed leaves no reasonable doubt that my briefing was not defective at all.

Surprisingly, the Committees next states that "Payne's defective briefing and pattern of waiving claims he deems not 'dispositive' of a petitioner's case demonstrates sloppy practice." As seen above, even if the single case cited in the Order and not deemed by Committee not to be misconduct, *Zheng v. Mukasey,* had been defective, which was certainly not the case, one defective brief out of approximately ninety-five filed does not a pattern make. As to the alleged pattern of waiving claims I deem not "dispositive" of a petitioner's case, deciding not to argue a claim or position is not sloppy, but cautious, reasoned practice permitted and even required by the Code in effect at the time of the alleged conduct. *See,* D.R 7-101(B) ("In the representation of a client, a lawyer may 1. Where permissible exercise professional judgment to waive or fail to assert a right or position of a client....") and D.R.7- 102(A)(2). Indeed, at the Committee hearing when asked the question of whether I engage in a practice of waiving

7

claims that I deem not dispositive, I replied as follows, as found at page 25, lines 6 through 13 of the Hearing Transcript.

> "Q. Let me ask, do you, as a matter of practice waive claims that are not dispositive? If you follow my question.
>
> A. I really couldn't make a general statement to that, but as to the CAT claims, I would because the burden of proof is so high, I don't think it's worth taking [the] Court's time to go through them."

During the period in question, and now, the burden of proof for a CAT claim is to demonstrate that it is more likely than not that the claimant will be subjected to torture if removed to his or her country. *See, Matter of J—F—F--,* 23 I. & N. Dec 912, 917 (AG 2006). I do not believe that I ever had a case during this period where there was even a shred of evidence that it was more likely than not that the petitioner would be tortured if returned to his or her native country .

While it is not possible to say how the Court would have acted on those cases that I defaulted on, and it is certainly true that my conduct deprived those petitioners of their opportunity to have their cases heard, having handled over one hundred petitions for review before this Court, I think I can say with some confidence that it is extremely unlikely that any of the defaulted cases, except for that of *Qin Di Zhu v. Gonzales,* 05-5094-ag, would have been granted. As to *Zhu,* as I have stated before, the relief sought in this Court I later obtained from the BIA itself.

There is nothing in the record to support the Committee's statement that "Payne demonstrated a general lack of remorse about violating the Court's scheduling...." To the contrary, I substantially revised my procedures so that this conduct ended years before the Court Referral Order. I am very sorry for all the inconvenience I caused the Court by my violation of scheduling orders. As to remorse for defective briefing, as shown above, there was no defective briefing, and the Committee so agrees as to *Han Ying Zhu v. Gonzales.*

8

Finally, the Committee raises the case of *Zhou v. Ashcroft*, 04-3994-ag as a violation of D.R. 2-110(B)(4) because I filed a motion for extension of time to file petitioner's brief subsequent to the petitioner's discharge of me on August 17, 2005. As I have explained above, I do not believe that I violated D.R. 2-110(B)(4) because after the petitioner had discharged me to obtain new counsel, no new counsel filed an appearance, and as the deadline for petitioner to file his brief approached, I telephoned the petitioner, and he orally consented to, agreed to, and authorized me to file a motion to extend the time for petitioner to file his brief. I believe that I therefore complied with D.R. 2-110(A)(2) ("[A] lawyer shall not withdraw from employment until the lawyer has taken steps to the extent reasonably practicable to avoid foreseeable prejudice to the rights of the client...") by acting as I did.

## III. Recommendation

In light of the relatively dated nature of the misconduct as to scheduling orders and the fact that I have not repeated this conduct for years before even the Referral was made, I believe that a private reprimand is appropriate. As discussed above, the Committee uses as an important basis for its criticism of my conduct with respect to scheduling orders a decision of this Court from 2010, years after my conduct occurred. This is not to say that I was blameless in my conduct with respect to scheduling orders. I should have more carefully ascertained what this Court expected from counsel for a petitioner who did not want to go forward with the Petition for Review.

I shall be pleased to complete no fewer than six hours of pre-approved CLE, in appellate immigration law from a CLE provider accredited by the Appellate Division, First Department, of the Supreme Court of the State of New York. over and above the required hours of CLE otherwise required of New York attorneys.

I respectfully ask this Court to understand that I have tried at all times to best represent my clients in light of many problems created by their physical transiency, their lack of a basic education and fluency in the English language, their lack of a cultural background to give them even an elementary understanding of the American legal system, and their frequent lack of cooperation with me.

I ask this Court to accept my sincerest apologies for all the inconvenience I caused.

Respectfully submitted,

DOUGLAS B. PAYNE

Dated: October 24, 2011

10