15-90101-am
*In re Rome*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of March, two thousand seventeen.

PRESENT:

> JOSÉ A. CABRANES,
> ROBERT D. SACK,
> RICHARD C. WESLEY,
> *Circuit Judges.*

_____

IN RE THOMAS SCOTT ROME,                                    15-90101-am

*Attorney.*                          **ORDER OF**
                                     **GRIEVANCE PANEL**

_____

Thomas Scott Rome was admitted to the New York State bar in 1983, and to this Court's bar in 2014. Based on his conduct in several appeals in this Court, we ordered Rome to show cause why disciplinary or other corrective measures should not be imposed on him pursuant to Federal Rules of

Appellate Procedure 46(b) and (c) and Second Circuit Local Rule 46.2. Upon due consideration of the conduct described in that prior order (the "Show-Cause Order"), Rome's response and supplemental responses to the Show-Cause Order, and the additional matters discussed below, it is hereby **ORDERED** that Rome is **PUBLICLY REPRIMANDED** for his misconduct in this Court.

Rome was referred to this panel as a result of his conduct in five appeals in this Court in which he represented the appellants: *Saintil v. Lynch*, 14-3542, *Gordon v. Lynch*, 14-4361, *Clue v. Lynch*, 15-1992, *Vu v. Lynch*, 15-2209, and *Salcedo v. Lynch*, 15-3305. After Rome responded to the Show-Cause Order, he was asked to address a sixth appeal in which he represented the appellant: *Forbes v. Lynch*, 15-3899. The relevant portions of the Show-Cause Order are appended to the present order. In this order, we address Rome's misconduct in each of the relevant appeals.

**I.     *Saintil v. Lynch*, 14-3542**

As a preliminary matter, concerning *Saintil v. Lynch*, 14-3542, we agree with Rome that some of the conduct attributed to him in the Show-Cause Order should be attributed to the appellant himself, who proceeded *pro se* from the inception of the appeal in September 2014 until Rome filed his notice of appearance in May 2015. *See Saintil v. Lynch*, 14-3542, doc. 49 (May 2015 notice of appearance). Thus, Rome is not responsible for the defaults that culminated in the January 2015 dismissal of the appeal. He entered the appeal only after Saintil, *pro se*, successfully obtained reinstatement in March 2015.

Nevertheless, Rome is responsible for two subsequent dismissals, in November 2015 and October 2016, both resulting from his defaults. *See id.*, doc. 60 (order stating appeal will be dismissed if Form C/A is not filed by specified date), doc. 62 (notice of defective Form C/A, warning of dismissal if corrected form was not timely filed), entry 69 (stating dismissal order had become effective, based on failure to file Form C/A), doc. 150 (order stating appeal will be dismissed if brief is not filed by specified date), entry 155 (stating dismissal order had become effective, based on failure to file brief).

2

The November 2015 dismissal was based on a defect in Rome's first version of Form C/A: his failure to attach a copy of the order being appealed. *See id.*, doc. 62. Rome did not file a new version of Form C/A until five weeks after he was notified of the defect, long after the deadline for filing the new version and two weeks after the November 2015 dismissal. *See id.*, doc. 70. The new version of Form C/A was found defective for different reasons: Rome's failure to make it text-searchable and his failure to move for reinstatement. *See id.*, doc. 71. Rome's response to the Show-Cause Order addresses only the text-searchable defect: he states that the paralegal who filed the defective form was not familiar with the software that would have made it text-searchable. *See* Response at 2-3. Rome does not explain the five-week delay between the rejection of his first Form C/A and his attempted filing of the second Form C/A.

The October 2016 dismissal of the appeal was based on Rome's failure to file a brief. *See Saintil*, 14-3542, doc. 150 and entry 155. Rome states that he was not responsible for that default since he had been relieved of his representation of Saintil in April 2016, well before entry of the order setting the October 2016 briefing deadline. *See* First Suppl. Response at 1. Rome is incorrect.

The April 2016 order cited by Rome clearly stated that Rome had moved to withdraw as counsel for Saintil only in the consolidated appeal docketed under 16-302, and, in granting the motion, the order explicitly advised that "Mr. Rome shall remain as counsel of record for the lead appeal, docket no. 14-3542." *Saintil*, 14-3542, doc. 117. Similarly, Rome's motion to withdraw reflected only an intention to withdraw from the appeal docketed under 16-302. *See Saintil v. Lynch*, 16-302, doc. 14. Additionally, the docket reflects that Rome understood that he remained as counsel in the lead appeal after the April 2016 order was issued: three months after that order relieved him as counsel in the consolidated appeal, he filed a scheduling notification letter proposing a deadline for his brief in the lead appeal. *See Saintil*, 14-3542, doc. 144. When Rome failed to file that brief, the appeal was dismissed. *See id.*, entry 155.

Rome's incorrect belief that he was not responsible for the October 2016 dismissal leaves this Court without an explanation for the default that caused that dismissal.

**II.    *Gordon v. Lynch*, 14-4361**

Regarding *Gordon v. Lynch*, 14-4361, Rome concedes that he failed to respond to telephone messages left by Court employees about a defective motion, and failed to timely cure that defective motion, resulting in dismissal of the appeal. *See* Response at 3. He states that these failures resulted from "the press of other matters," and that he did not become aware of his deficient conduct until after the default dismissal. *Id.* He also states that technological problems caused him to file certain motions in a defective format, that an "office failure" caused him to omit a required form from another filing, and that he overlooked the need to file another form as a result of the technological problems he was experiencing with other filings. *Id.* at 3-4.

**III.    *Clue v. Lynch*, 15-1992, and *Vu v. Lynch*, 15-2209**

Rome states that his defaults in both *Clue v. Lynch*, 15-1992, and *Vu v. Lynch*, 15-2209, occurred during a period when he was occupied by his father's hospitalization and death, and his wife's subsequent hospitalization. *See* Response at 4-5. He further states that his failure to satisfy the relevant deadline in *Clue* also resulted from, in part, his client's difficulty in providing him with required information. *See id.* at 4.

The events addressed by Rome in his response to the Show-Cause Order occurred in roughly June through August 2015. While we find his explanation for the defaults during that time period satisfactory, we note that Rome caused a later default in *Vu*. Specifically, nearly one year later, the *Vu* appeal was dismissed when Rome failed to file his brief by the June 2016 deadline that he himself had proposed. *See Vu*, 15-2209, docs. 33 (Rome's scheduling notification proposing deadline for brief), 35 (order approving proposed deadline), 41 (order dismissing appeal based on failure to file brief). In his motion to reinstate

4

the appeal, Rome asserted that the default "was due to a law office mistake in the calendaring of the due date, compounded by a family emergency" involving his child's serious health issue, which required Rome's absence from the office for a period beginning six days prior to the deadline. *Id.*, doc. 43 at 2 (pdf pagination). Rome also asserted that, had he been in his office, "the calendaring error would normally have been discovered," allowing timely filing of his brief.[1] *Id.*

**IV.     *Salcedo v. Lynch*, 15-3305**

Regarding *Salcedo v. Lynch*, 15-3305, the Show-Cause Order first noted that Rome had filed a defective motion for a stay of removal. In his response, Rome states that, because he is no longer attorney of record in that case, he cannot access the relevant documents electronically. *See* Response at 5. He then assumes that the stay motion was defective because it was not text-searchable, and concedes that the paralegal who filed the motion was not properly supervised. *See id.* However, Rome did not request help accessing the relevant documents, he is incorrect about the nature of the defect (which concerned a missing form and proof of service, not text-searchability), and he does not address his failure to either cure the defect by the specified deadline or request an extension of time. *See Salcedo*, 15-3305, doc. 12 (notice of defect, providing deadline to cure defect); *see also In re Aranda*, 789 F.3d 48, 56 (2d Cir. 2015) ("An attorney responding to disciplinary charges must make reasonable efforts to review all relevant records and other evidence; if relevant evidence is not accessible, the attorney must detail his or her efforts to obtain it and, if appropriate, request a subpoena or other help from this Court.").

Regarding his failure to timely pay the filing fee or move for *in forma pauperis* status, Rome states that he was waiting for his client to decide whether to proceed with the appeal and to provide him with financial

---

[1] Although the Show-Cause Order did not require Rome to address his June 2016 default in *Vu* (since that conduct post-dated the Show-Cause Order), Rome had ample opportunity and incentive to address it in his motion to reinstate the appeal. However, even if that default were not considered in the present proceeding, our judgment would be the same.

information. *See* Response at 5. However, Rome does not explain why he did not request an extension of time or a stay of the appeal. "An attorney who is evaluating whether an appeal [will] proceed . . . cannot passively allow deadlines in the appeal to expire during that evaluation process." *In re Villanueva*, 633 F. App'x 1, 2 (2d Cir. 2015) (summary order). If Rome's client needed additional time, Rome was required to take affirmative action. "Simply ignoring the deadline . . . [was] not an option." *In re Payne*, 707 F.3d 195, 203-04 (2d Cir. 2013) (discussing attorney who permitted briefing deadlines to expire while awaiting stipulations to withdraw his clients' appeals); *see also In re Yan*, 390 F. App'x 18, 20 (2d Cir. 2010) (summary order) ("[I]f it is unclear whether a client wishes to proceed, an attorney may, depending on the circumstances, request: an extension of time to file his brief, a stay of the appeal, withdrawal as counsel, withdrawal of the appeal, or advice from the Court. [The attorney's] failure to take any of the preceding actions was a disservice to his clients, this Court, and the public.").

Rome also states that he ultimately did not pay the filing fee or move for *in forma pauperis* status because, on the deadline for doing so, his client filed a handwritten statement that Rome no longer represented him and that he would be proceeding *pro se*. *See* Response at 5-6; *see also Salcedo*, 15-3305, doc. 21 (client's statement). However, Rome's assumption that his client's handwritten statement relieved Rome of the need to comply with the deadline was incorrect, and improperly risked the dismissal of the appeal.

When counsel appears in an appeal, the client generally is not permitted to file *pro se* papers. Consistent with this rule the Court forwarded the client's handwritten statement to Rome to allow him to take "appropriate action" as counsel of record. *Salcedo*, 15-3305, doc. 21 at 1. Additionally, counsel of record generally remains responsible for the appeal until a proper motion to withdraw has been granted by the Court. *Payne*, 707 F.3d at 206 ("[C]ounsel may not end the representation of a client without taking affirmative action.").

6

Since the Court had already advised Rome that the appeal would be dismissed if he did not act by the specified deadline, at the very least he should have sought advice from the Court. Even if a reasonable attorney would have been uncertain of the effect of the client's handwritten statement, a reasonable attorney would not have assumed that the deadline was no longer valid or that he no longer had any responsibility to avoid the dismissal threatened for that very day. To the contrary, when an attorney is terminated by his client, the attorney remains obligated to help make the transition as seamless as possible and to avoid foreseeable prejudice to the client. *See* N.Y. Rules of Professional Conduct 1.16(c)(1) and 1.16(e), and Rule 1.16 Comment 9.[2] Rome had no reason to believe that the client's handwritten statement would prevent the dismissal, and should have (a) communicated with his client about the need to satisfy the deadline, (b) requested an extension of time or stay of proceedings to permit an orderly transition, and/or (c) sought advice from the Court. Fortunately for Rome's client, the appeal was not dismissed based on Rome's default.

**V.     *Forbes v. Lynch*, 15-3899**

In a supplemental response to the Show-Cause Order, Rome addresses the default dismissal in *Forbes v. Lynch*, 15-3899, in which Rome represented the appellant. *See Forbes*, 15-3899, doc. 27 (order stating appeal will be dismissed if brief is not filed by specified date), entry 31 (stating dismissal order had become effective, based on failure to file brief). Rome states that, prior to the deadline for filing his brief, he had concluded that the appeal had been mooted by the Court's earlier decision in *Forbes v. Lynch*, 15-2445. *See* Suppl. Response at 1-2. However, he correctly concedes that he should have sought

---

[2] Under Rule 1.16(c)(1), "a lawyer may withdraw from representing a client when . . . withdrawal can be accomplished without material adverse effect on the interests of the client." Under Rule 1.16(e), "[e]ven when withdrawal is otherwise permitted or required, upon termination of representation, a lawyer shall take steps, to the extent reasonably practicable, to avoid foreseeable prejudice to the rights of the client." Comment 9 to Rule 1.16 states that, "[e]ven if the lawyer has been unfairly discharged by the client, under paragraph (e) a lawyer must take all reasonable steps to mitigate the consequences to the client."

withdrawal of the appeal, rather than permitting its dismissal based on default. *See id.; see also Payne*, 707 F.3d at 206 ("[C]ounsel may not . . . permit the termination of an appeal by allowing its dismissal for lack of prosecution.").

**VI.    Additional Defaults**

Finally, this Court's docket reflects that Rome has defaulted in appeals as recently as August and September 2016, well after he was on notice in this disciplinary proceeding that the Court was troubled by his conduct. In *Rennis v. Lynch*, 16-2495, Rome defaulted by failing to pay the filing fee and to file a required form by the respective deadlines, but did comply with those requirements after orders were issued noting his defaults and threatening dismissal. *See Rennis*, 16-2495, docs. 11, 12 (orders). A later default, concerning Rome's failure to file another form, was rendered moot by the withdrawal of the appeal. *See id.*, docs. 24 (order threatening dismissal based on default), 29 (order granted motion to withdraw appeal).

In *Lindsey v. Sessions*, 16-2254, the appeal was dismissed based on Rome's failure to file a required form. *See Lindsey*, 16-2254, doc. 20 (order stating appeal would be dismissed if form was not filed by a specified deadline), entry 23 (noting dismissal based on default). In Rome's motion to reinstate the appeal, he argued that the default "was the result of law office error on the part of a paralegal whose employment has since been terminated," and that it "occurred during a time when [Rome] was out of the office on vacation." *Id.*, doc. 25 at 2 (pdf pagination). The appeal was reinstated. *Id.*, doc. 29.

**VII.    Mitigating and Aggravating Factors**

Rome presents one substantial mitigating factor: his misconduct in *Clue* and *Vu* during the summer of 2015 and his June 2016 default in *Vu* occurred while he was occupied by his father's hospitalization and death, his wife's hospitalization, and his child's health emergency. *See Villanueva*, 633 F. App'x at 5 ("An attorney's culpability for misconduct may be mitigated if, during the relevant time period, the attorney was

8

overwhelmed by the illnesses or other dire circumstances of close family and friends . . .”). We appreciate the difficulty caused by such circumstances.

Rome also states that he has instituted corrective measures to prevent deadlines from being overlooked, including the use of a checklist of required filings and deadlines and the computer calendaring of all deadlines. And he has represented that he will ensure that all of his employees have proper instruction and oversight. *See* Response at 3, 6. While remedial measures can be treated as mitigating factors, we give little weight to the measures instituted by Rome.

After providing those assurances and instituting those measures, Rome defaulted in *Saintil*, *Vu*, *Forbes*, *Rennis*, and *Lindsey* (i.e., in the majority of his then-pending cases). The defaults in *Saintil*, *Vu*, *Forbes*, and *Lindsey* resulted in dismissal. While Rome states that *Forbes* would have been withdrawn regardless, the dismissals in *Vu* and *Lindsey* clearly were unintended (as evidenced by the motions for reinstatement).[3] Thus, Rome's remedial measures have had limited success.

This disciplinary matter presents at least three significant aggravating factors. First, as noted above, Rome continued to default even after being put on notice by our Show-Cause Order. *See In re Roman*, 601 F.3d 189, 196 (2d Cir. 2010) (“[T]he fact that Roman continued to engage in misconduct in this Court after being put on notice by the Ninth Circuit about similar misconduct constitutes a significant aggravating factor.”); *In re Schwartz*, 665 F. App'x 99, 103 (2d Cir. 2016) (summary order) (holding that the attorney's failure to alter his behavior, after this Court's order to show cause in the disciplinary proceeding

---

[3] It appears likely that the dismissal in *Saintil*, 14-3542, also was unintended, as evidenced by Saintil's actions in the consolidated appeal. In September 2016, the consolidated appeal (16-302) was dismissed in an order that permitted the lead appeal (14-3542) to proceed to full briefing. *Saintil*, 16-302, doc. 38; *Saintil*, 14-3542, doc. 140. Around that same time, Saintil moved *pro se* for reconsideration of the dismissal of the consolidated appeal, arguing that he remained entitled to asylum and other relief. *Saintil*, 16-302, doc. 42. Although his motion was unsuccessful, *see id.*, doc. 46 (order denying reconsideration), it strongly suggests that Saintil would have wanted to continue with the surviving lead appeal, in which Rome's brief was due four weeks after the filing of the reconsideration motion.

put him on notice of the Court's concerns, constituted a significant aggravating factor); *In re Castillo*, 645 F. App'x 41, 43 (2d Cir. 2016) (summary order) (same).

Second, Rome's misconduct occurred in appeals from deportation orders, where important liberty interests were at stake. *Cf. Aranda*, 789 F.3d at 59 (discussing misconduct occurring in criminal appeals). Not only did Rome's defaults risk the dismissal of his clients' appeals (which in fact occurred in several), he put them at risk of deportation without the merits of their appeals being considered.

Third, because Rome is an attorney with over thirty years' experience, he should have known better than to engage in repeated misconduct of this nature. A reasonable attorney with comparable experience "(a) clearly would know that defaulting on a client's case leaves open the possibility of severe prejudice and (b) should have office and calendaring practices in place to avoid defaults." *In re DeMell*, 589 F.3d 569, 573 (2d Cir. 2009); *see also* ABA Standards for Imposing Lawyer Sanctions § 9.22(i) (1986, amended 1992) (listing "substantial experience in the practice of law" as possible aggravating factor).

**VIII. Conclusion**

Upon due consideration of the matters discussed above, it is hereby **ORDERED** that Rome is **PUBLICLY REPRIMANDED** for his misconduct in this Court. We are particularly disturbed by Rome's continued misconduct after our Show-Cause Order put him on notice of our concerns. Despite the various technological, staffing, and personal issues encountered by Rome, he has had ample time to put his practice in order. His failure to do so has been a disservice to his clients, the Court, and the public.

The Clerk of Court is directed to release this decision to the public by posting it on this Court's website and providing copies to the public in the same manner as all other unpublished decisions of this

10

Court, and to serve a copy on Rome, the Connecticut Statewide Grievance Committee, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[4]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

_____

## APPENDIX : TEXT OF SHOW-CAUSE ORDER

---

[4] Counsel to this panel is authorized to provide, upon request, all documents from the record of this proceeding to other attorney disciplinary authorities. While we request that those documents remain confidential to the extent circumstances allow, we of course leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

For the reasons that follow, Thomas Scott Rome is ordered to show cause why disciplinary or other corrective measures should not be imposed on him pursuant to Federal Rules of Appellate Procedure 46(b) and (c) and Second Circuit Local Rule 46.2.

Rome was referred to this panel as a result of his conduct in five appeals in this Court in which he represented the appellants: *Saintil v. Lynch*, 14-3542, *Gordon v. Lynch*, 14-4361, *Clue v. Lynch*, 15-1992, *Vu v. Lynch*, 15-2209, and *Salcedo v. Lynch*, 15-3305.

[Paragraph concerning *Saintil v. Lynch*, 14-3542, redacted to omit events preceding Rome's May 2015 notice of appearance.]   After Rome filed [his] notice of appearance, . . . he filed a defective Form C/A and was told that the appeal would be dismissed unless the defect was cured by a specified deadline, *id.*, docs. 61, 62. Rome failed to cure the defect by the specified deadline, and the appeal was dismissed yet again.   *Id.*, entry 69.   Although Rome successfully moved for reinstatement of the appeal, *id.* doc. 78, he recently has been told that the appeal will be dismissed if he fails to file another missing form by December 14, 2015, *id.*, doc. 81.   As of the date of this order, the docket does not reflect any response by Rome.

In *Gordon v. Lynch*, 14-4361, Rome was instructed to cure his defective motion for *in forma pauperis* status by December 11, 2014, but failed to do so.   *See* 14-4361, doc. 10.   Over the next month, a Clerk's Office employee left two telephone messages about the defective motion, *id.*, entries 12-13, but the docket does not reflect any response by Rome.   An order was then entered informing Rome that the appeal would be dismissed unless he paid the filing fee or filed a proper motion for *in forma pauperis* status by January 28, 2015.   *Id.*, doc. 17.   Rome did not do so, resulting in dismissal of the appeal.   *Id.*, entry 21.   Rome then moved for reinstatement of the appeal and other relief, but his papers were found defective and he failed to cure the defects by the specified deadline.   *Id.*, docs. 22-25.   Over a month after that deadline, he again filed defective motions for reinstatement and other relief.   *Id.*, docs. 30-32.   Rome cured the defects, and the appeal was reinstated in late March 2015.   *Id.*, docs. 33-34, 39.   However, Rome now has defaulted on the filing of a required form and has been warned that the appeal will be dismissed if the form is not filed by December 17, 2015.   *Id.*, doc. 60.   As of the date of this order, the docket does not reflect any response by Rome.

In *Clue v. Lynch*, 15-1992, Rome was warned that the appeal would be dismissed unless he paid the filing fee or moved for *in forma pauperis* status by a specified deadline.   *See* 15-1992, doc. 15.   He did not do so, causing the dismissal of the appeal.   *Id.*, entry 20.   However, Rome succeeded in having the appeal reinstated, *id.*, doc. 29, and it was decided on the merits, *id.*, doc. 37.

In *Vu v. Lynch*, 15-2209, Rome failed to either pay the filing fee or move for *in forma pauperis* status until after he was warned that the appeal would be dismissed based on that default.   *See* 15-2209, doc. 8.   His subsequent motion for *in forma pauperis* status is now pending.   *Id.*, doc. 10.

In *Salcedo v. Lynch*, 15-3305, Rome filed a defective motion for a stay of removal, *see* 15-3305, docs. 7, 12, and failed to either pay the filing fee or move for *in forma pauperis* status, resulting in an order warning that the appeal would be dismissed if that default was not cured by November 18, 2015, *id.*, doc. 17.   The docket does not reflect any response from Rome.   Instead, on that date, the Court received a letter from Salcedo himself stating that he would proceed *pro se*; the letter was forwarded to Rome to allow him to take appropriate action as Salcedo's counsel of record.   *Id.*, doc. 21.   A Clerk's Office employee also spoke with Rome, instructing him to file a motion to be relieved as counsel.   *Id.*, entry 22.   Rome failed to do so;

instead Salcedo filed a *pro se* motion for substitution of himself as counsel, asking that any further papers from Rome be disregarded.  *Id.*, doc. 27.   In November 2015, Rome was relieved as counsel and Salcedo was permitted to proceed *pro se.*   *Id.*, doc. 24.

[remainder of order omitted]